# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| JOHN DOE I, an individual proceeding by pseudonym; JOHN DOE II, an individual proceeding by pseudonym; and JOHN DOE III, an individual proceeding by pseudonym;<br><br>    Plaintiffs,<br><br>    v.<br><br>PARVIZ SABETI, an individual;<br><br>    Defendant. | CASE NO. 6:25-cv-219 |

## <u>PLAINTIFFS' MOTION FOR LEAVE TO PROCEED BY PSEUDONYM</u>

Plaintiffs, John Does I through III ("Plaintiffs"), through their undersigned counsel, respectfully seeks leave of this Court to proceed pseudonymously because, under the totality of the circumstances, the disclosure of Plaintiffs' identities will violate a substantial privacy right for Plaintiffs and put them at risk of retaliatory harm that outweighs the presumption of openness in judicial proceedings.  Moreover, the granting of Plaintiffs' motion will not prejudice Defendant's ability to defend himself in the instant action and will better serve the public interest.

## MEMORANDUM OF LAW IN SUPPORT

### I.    INTRODUCTION

Plaintiffs bring their action against Defendant Sabeti ("Defendant Sabeti",

"Sabeti" or "Defendant") to recover damages for the injuries they suffered in being

detained, tortured, denied due process, denied proper trials, and serving sentences

in prison due to their perceived political associations.  Defendant Sabeti is liable

for these damages as the architect of institutionalized government torture under the

Iranian Regime of Shah Mohammad Reza Pahlavi (the "Shah"); the members of

the security forces who detained and tortured Plaintiffs were acting as Defendant's

agents under Defendant's policies, orders, and instruction.

Due to the nature of Plaintiffs' allegations and the real threat to Plaintiffs'

safety posed by potential retaliation from the Iranian government and from violent

supporters of the former monarchy, Plaintiffs request that this Court grant their

motion to proceed pseudonymously under Federal Rule of Civil Procedure 26(c)

throughout the pendency of this lawsuit and beyond.  Plaintiffs' substantial privacy

and safety interest regarding the allegations outweighs the public interest in

needing to know their identities.  In addition, granting Plaintiffs' motion will not

prejudice Defendant's ability to defend himself in the instant action.

Plaintiffs respectfully move this Court to let them proceed through the

pseudonyms John Doe I, John Doe II, and John Doe III, respectively, throughout

the pendency of this lawsuit and beyond, and require that any documents containing their true name be filed under seal.

## II.    SUMMARY OF FACTS

Plaintiffs bring this lawsuit against Defendant Parviz Sabeti for damages resulting from them being detained, tortured, and eventually convicted for being seen as political dissidents.  (Compl. ¶ 1; Does I-III Decls. ¶ 3.)  The allegations therein concern Defendant's actions as a government official in his official capacity as Deputy Director of SAVAK and Chairperson of the Joint Anti-Sabotage Committee.  (*See*, *e.g.*, Compl. ¶¶ 1–6, 52–59, 101–107.)

Plaintiffs' lawsuit concerns the torture they endured in Iran, the details of which all Plaintiffs find deeply personal, humiliating, and difficult to talk about. (*See* Doe I Decl. ¶¶ 48–51; Doe II Decl. ¶¶ 45–49; and Doe III Decl. ¶¶ 39–43.) Plaintiffs' torture included psychological torment, beatings, whippings, and more; some of the torture was directed at their genitals.  (*See* Compl. ¶¶ 76, 88, 97; *see also* Doe I Decl. ¶ 49; and Doe III Decl. ¶ 40.)  Plaintiffs believe the goal of torture "is to destroy the will of a person and break their spirit" (Doe III Decl. ¶ 42) and to "degrad[e] [] the mind, body and spirit" (Doe II Decl. ¶ 47).  Being forced to publicly reveal the intimate details of their torture feels like an invasion of Plaintiffs' privacy.  (Doe I Decl. ¶¶ 48–51; Doe II Decl. ¶ 48; and Doe III Decl. ¶ 43.)  These details are not things Plaintiffs want to share, even with their family.

(Doe I Decl. ¶¶ 49, 51; Doe II Decl. ¶ 49; and Doe III Decl. ¶¶ 40, 43.)  Sharing the details of their torture is a vulnerable process (Doe III Decl. ¶ 42) that "can feel dishonorable and humiliating" (Doe III Decl. ¶ 40).  "In [their] culture [torture] is not something that people share or talk about."  (*Ibid.*)

Defendant Sabeti is widely recognized as an architect of institutionalized torture in Iran.  (Compl. ¶ 5.)  Defendant used violence and intimidation as a means of maintaining political power.  (Compl. ¶ 6.)  Plaintiffs reasonably believe that he may continue to use violence and intimidation now to protect himself from this lawsuit and maintain the influence he has now.  (Doe I Decl. ¶ 47; Doe II Decl. ¶ 44; and Doe III Decl. ¶ 38.)  Defendant Sabeti is an internationally recognized public figure, much discussed by historians and journalists.  (*See*, *generally*, Compl.)  He gave numerous interviews during the Shah's regime and recently participated in a documentary.  (*See* Compl. ¶¶ 60, 63, 113.)  Defendant Sabeti even has his own Wikipedia page available in four different languages.[1]  This lawsuit does not contain any allegations regarding Defendant's role in torture that have not already been made by historians, journalists, prior SAVAK personnel, and other Iranian detainees alike.  (*See*, *e.g.*, Compl. ¶¶ 64–69.)  Plaintiffs have all been personally threatened and have had close friends and relatives threatened by

---

[1] *Parviz Sabeti*, WIKIPEDIA, https://en.wikipedia.org/wiki/Parviz_Sabeti (last visited Feb. 7, 2025).

individuals reportedly acting on behalf of the Islamic Republic due to their political beliefs. (*See* Doe I Decl. ¶¶ 5–27; Doe II Decl. ¶¶ 5– 21; and Doe III Decl. ¶¶ 4–8, 11–15, 18; *see also*, *generally*, Doe I Child Decl.) Plaintiffs reasonably believe that the current government of the Islamic Republic will view their participation in this lawsuit, which seeks accountability for torture committed against political dissidents in Iran, as politically dissident. (Doe I Decl. ¶ 35; Doe II Decl. ¶ 26; and Doe III Decl. ¶ 23.) Plaintiff John Doe I has had repeat, threatening contact with elements of the Iranian government throughout his time in the United States. (*See* Doe I Decl. ¶¶ 14–27.) He believes that he has previously only been seen as a potential threat and fears that his participation in this lawsuit will mark him an active target of the Iranian government. (Doe I Decl. ¶ 28.) He fears that he will be murdered for his participation in this lawsuit. (Doe I Decl. ¶¶ 31, 36.) Plaintiff John Doe II has had numerous close friends expressly threatened by elements of the Iranian government while living abroad. (Doe II Decl. ¶¶ 18– 21.) He believes and fears that his participation in this lawsuit will result in him and his family being threatened by the Iranian government, and potentially even murdered. (Doe II Decl. ¶¶ 26–27.) Plaintiff John Doe III was previously violently attacked by supporters of the Islamic Republic (one of whom is now an active personality in the Islamic Republic) while living in the United States. (Doe III Decl. ¶¶ 10–15.) Doe III's brother has told him not to return to Iran and that his

life would be in jeopardy if he did.  (Doe III Decl. ¶ 19.)  Plaintiffs reasonably believe that they will face persecution from the Iranian government for their participation in this lawsuit.  (*See* Doe I Decl. ¶¶ 31–35; Doe II Decl. ¶¶ 24–26; and Doe III Decl. ¶¶ 20–23.)  Plaintiffs reasonably do not believe that their residing in the United States is sufficient protection.  (Doe I Decl. ¶ 36; Doe II Decl. ¶ 27; and Doe III Decl. ¶ 24.)

Defendant Sabeti was an influential official under the Shah's regime and has reportedly served as an advisor for Crown Prince Reza Pahlavi, the leader of the monarchist faction of Iranians.  (Compl. ¶ 138.)  And Defendant Sabeti's daughter is on the advisory council for The National Union for Democracy in Iran, an organization affiliated with the Monarchist movement in the United States.  (*Ibid*.)  Because of these ties, Plaintiffs reasonably believe that monarchists will perceive Plaintiffs as an enemy due to their participation in this lawsuit against Defendant Parviz Sabeti.  (Doe I Decl. ¶ 40; Doe II Decl. ¶ 31; and Doe III Decl. ¶ 29.)

Plaintiffs reasonably believe that their participation in this lawsuit, which details and seeks accountability for the human rights violations they faced under the monarchy, will undeniably mark them as anti-monarchist.  (Doe I Decl. ¶ 40; Doe II Decl. ¶ 31; and Doe III Decl. ¶ 29.)  Since 2022, monarchists have been involved in several violent incidents in Iranian protests including sexual assaults and the beating of perceived opponents.  (Compl. ¶ 137.)  Plaintiffs are all aware of

incidents involving monarchists calling for violence towards and actively acting violently towards those who do not support the restoration of the monarchy to Iran. (Doe I Decl. ¶¶ 42–43; Doe II Decl. ¶¶ 32–40; and Doe III Decl. ¶¶ 30–33.)  With how fanatical some aspects of the monarchist movement are, Plaintiffs reasonably fear that their participation in this lawsuit may put their lives at risk from monarchists.  (Doe I Decl. ¶ 41; Doe II Decl. ¶ 40; and Doe III Decl. ¶ 34.)

Plaintiff John Doe II has previously been personally threatened by monarchists and believes that he will be targeted again for his participation in this lawsuit.  (Doe II Decl. ¶¶ 32, 36, 40.)  All Plaintiffs have seen monarchists attacking people in demonstrations and/or starting fights at rallies.  (Doe I Decl. ¶ 42; Doe II Decl. ¶ 37; and Doe III Decl. ¶¶ 30–32.)  All Plaintiffs have also seen social media posts by Crown Prince Reza Pahlavi's wife calling for the death of opponents to the monarchy.  (Doe I Decl. ¶ 43; Doe II Decl. ¶ 38; and Doe III Decl. ¶¶ 33.)  Plaintiffs also have reasonable personal fears of Defendant Sabeti due to their understanding of his willingness to do them harm and his connections with violent and dangerous individuals.  (*See* Doe I Decl. ¶¶ 44–46; Doe II Decl. ¶¶ 41–43; and Doe III Decl. ¶¶ 35–37.)

## III.    ARGUMENT

The Federal Rules of Civil Procedure require pleadings to state the names of all parties. Fed. R. Civ. P. 10(a).  However, for good cause, the Court may issue an

order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). "Whether a party's right to privacy outweighs the presumption of openness is a totality-of-the-circumstances question." *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020). No one factor is "meant to be dispositive" and Courts "should carefully review *all* the circumstances of a given case." *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011).

The Eleventh Circuit has found that the "first step" in determining if anonymity is appropriate is to consider the three factors analyzed in *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (hereinafter "*SMU*"): "whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; **or** (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (emphasis added); *see also Plaintiff B*, 631 F.3d at 1316. Notably, "[t]he *SMU* factors are not 'prerequisites to bringing an anonymous suit.'" *Freedom from Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F.Supp.3d 1353, 1357 (S.D. Ga. 2015) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).

As the second step of the analysis, Eleventh Circuit courts "should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1247 (quoting *Plaintiff B*, 631 F.3d at 1316) (emphasis in original). The Eleventh Circuit has identified such additional factors to include whether plaintiffs are threatened with violence or physical harm absent anonymity and whether anonymity poses a unique threat of fundamental unfairness to the defendant. *Ibid.*; *see also Plaintiff B*, 631 F.3d at 1316; *C. S. v. Choice Hotels Int'l, Inc.*, No. 2:20-CV-635-JES-MRM, 2021 WL 2792166 at *4–5 (M.D. Fla. June 11, 2021).

Here, pseudonym status and proceeding under seal is warranted because this litigation concerns actions taken by Defendant Sabeti in his official capacity as an officer of the Iranian government under the former Shah Mohammad Reza Pahlavi, will involve the disclosure of highly personal information, and may invite cross-border criminal prosecution from Iran in the form of extrajudicial execution. Furthermore, this lawsuit is expected to invite retaliatory violence from persons and organizations in the United States and abroad in the Islamic Republic of Iran and pseudonymity will not prejudice Defendants' ability to defend himself.

Under the three *SMU* factors and the totality of the circumstances, Plaintiffs should not be compelled to disclose their identity because Plaintiffs' privacy and safety interests substantially outweigh the customary practice of judicial openness and there is no prejudice to Defendant.

## A. The three *SMU* factors weigh in favor of granting Plaintiffs' request for pseudonymity.

Consideration of the three *SMU* factors accepted by the Eleventh Circuit— "whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; **or** (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution"—weighs in favor of granting Plaintiffs' request for anonymity. *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1247 (emphasis added); *see also Plaintiff B*, 631 F.3d at 1316.

### 1. Plaintiffs are challenging government activity.

The significance of the principle behind this factor (that a suit against a private party weighs against a plaintiff's request for anonymity, while a suit against the government does not) is premised on the reasoning that suits against the government "involve no injury to the Government's 'reputation,' [while] the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." *Frank*, 951 F.2d at

323–24 (quoting *SMU*, 599 F.2d at 713).  Sabeti is an internationally recognized public figure, much discussed by historians and journalists.  (*See*, *generally*, Compl.)  He has given numerous interviews and recently participated in a documentary.  (*See* Compl. ¶¶ 60, 63, 113.)  Defendant Sabeti even has his own Wikipedia page available in four different languages. Plaintiffs' allegations solely concern Defendant's actions as a government official in his official capacity as Deputy Director of SAVAK and Chairperson of the Joint Anti-Sabotage Committee.  (*See*, *e.g.*, Compl. ¶¶ 1–6, 52–59, 101–107.)

Moreover, Defendant Sabeti's reputation does not risk harm by this lawsuit. This lawsuit does not contain any allegations that have not already been made by historians, journalists, prior SAVAK personnel, and other Iranian detainees alike (*see*, *e.g.*, Compl. ¶¶ 64–69)—allegations widely accepted by large swathes of the Iranian diaspora.  Defendant's reputation is already indelibly linked to the torture and other human rights violations committed by SAVAK and the Committee under the Shah's regime.  Defendant does not face further reputational harm from this lawsuit, so the significance behind weighing cases brought against individual defendants is inapplicable here.

Accordingly, that Plaintiffs' claims are brought against Defendant Sabeti does not weigh against their request for pseudonymity.

- 11 -

### 2.  Plaintiffs would be compelled, absent anonymity, to disclose information of utmost intimacy.

Plaintiffs should be granted pseudonymity because they will need to disclose their experiences as torture victims—sensitive, humiliating, and intimately personal experiences that involved psychological torment and physical assaults, some directed at their genitals—which constitutes information of the utmost intimacy.  That the circumstances of a case would compel plaintiffs to disclose information of utmost intimacy weighs in favor of granting anonymity.  *See C. S. v. Choice Hotels Int'l, Inc.*, No. 2:20-CV-635-JES-MRM, 2021 WL 2792166, at *4 (M.D. Fla. June 11, 2021) (plaintiff's sex trafficking experience involving forced sexual service, physical assaults, and psychological torment was "information of the utmost intimacy" so the second *SMU* factor weighed "heavily in favor of granting [anonymity]"); *see also Plaintiff B*, 631 F.3d at 1316–18 (considering involvement of minors, homosexual conduct and lasting psychological damage of losing anonymity in finding coerced sexual conduct to be of the utmost intimacy).

Absent pseudonymity, Plaintiffs will be forced to disclose intimate details of their torture which included psychological torment, beatings, whippings, and more; some of the torture was directed at their genitals.  (*See* Compl. ¶¶ 76, 88, 97; *see also* Doe I Decl. ¶ 49; and Doe III Decl. ¶ 40.)  Plaintiffs find these details deeply personal, humiliating, and difficult to talk about.  (*See* Doe I Decl. ¶¶ 48–51; Doe

II Decl. ¶¶ 45–49; and Doe III Decl. ¶¶ 39–43.)  These details are not things

Plaintiffs want to share even with their family.  (Doe I Decl. ¶¶ 49, 51; Doe II Decl.

¶ 49; and Doe III Decl. ¶¶ 40, 43.)  Sharing the details of their torture is a

vulnerable process (Doe III Decl. ¶ 42) that "can feel dishonorable and

humiliating" (Doe III Decl. ¶ 40).  "In [their] culture this [torture] is not something

that people share or talk about." (*Ibid*.)

Plaintiffs believe the goal of torture "is to destroy the will of a person and

break their spirit" (Doe III Decl. ¶ 42) and to "degrad[e] [] the mind, body and

spirit" (Doe II Decl. ¶ 47).  It is unclear what could be more of the utmost intimacy

than Plaintiffs' dehumanization at the hands of their torturers.  Being forced to

publicly reveal the intimate details of their torture feels like an invasion of

Plaintiffs' privacy.  (Doe I Decl. ¶¶ 48–51; Doe II Decl. ¶ 48; and Doe III Decl.

¶ 43.)  Plaintiffs' torture is a matter of the utmost intimacy which weighs in favor

of granting them pseudonymity.

Whether this Court determines that Plaintiffs' experiences qualify as a matter

of the utmost intimacy, the Court should still weigh and balance that Plaintiffs are

victims of human rights violations, including torture, as part of the totality of the

circumstances of their request.  *See Neverson*, 820 F. App'x 984 at 986 ("Whether

a party's right to privacy outweighs the presumption of openness is a totality-of-

the-circumstances question."); *see also Plaintiff B*, 631 F.3d at 1316 (courts "should carefully review *all* the circumstances of a given case").

Because Plaintiffs will be compelled to disclose intimate, humiliating, and potentially stigmatizing details of their torture through this lawsuit, Plaintiffs should be granted pseudonymity.

    **3.**  **Plaintiffs' would be compelled, absent anonymity, to admit an intent to engage in conduct (this very lawsuit) deemed illegal by Iran and thus risk prosecution.**

Additionally, Plaintiffs contend that if they are denied pseudonymity, then they will be compelled to admit intent to engage in conduct perceived as criminal and threatening by the Iranian government, making them subject to persecution by the Iranian government. Plaintiffs reasonably expect the lawsuit to receive violent backlash from certain elements of the Iranian diaspora, particularly elements of the Iranian government. Plaintiffs' expect that their allegations may even invite cross-border "prosecution" from Iran in the form of extrajudicial execution. (*See* Doe I Decl. ¶¶ 31–36; Doe II Decl. ¶ 24–27; and Doe III Decl. ¶ 20-24.)

Plaintiffs have all been personally threatened and have had close friends and relatives threatened by individuals reportedly acting on behalf of the Islamic Republic due to their political beliefs. (*See* Doe I Decl. ¶¶ 5–27; Doe II Decl. ¶¶ 5– 21; and Doe III Decl. ¶¶ 4–8, 11–15, 18; *see also*, *generally*, Doe I Child

Decl.)  Plaintiffs reasonably believe that the current government of the Islamic Republic will view their participation in this lawsuit, which seeks accountability for torture committed against political dissidents in Iran, as politically dissident. (Doe I Decl. ¶ 35; Doe II Decl. ¶ 26; and Doe III Decl. ¶ 23.)  It is widely recognized by the broader geo-political community that the Islamic Republic continues to improperly detain, torture, unjustly convict, execute, and commit other human rights violations against political dissidents.  Furthermore, it is well reported across various news outlets that the Islamic Republic has repeatedly shown a willingness to target (and even execute) its political dissidents abroad.

Plaintiff John Doe I has had repeat, threatening contact with elements of the Iranian government throughout his time in the United States.  (*See* Doe I Decl. ¶¶ 14–27.)  He believes that he has previously only been seen as a potential threat and fears that his participation in this lawsuit will mark him an active target of the Iranian government.  (Doe I Decl. ¶ 28.)  He fears that he will be murdered for his participation in this lawsuit.  (Doe I Decl. ¶¶ 31, 36.)  Plaintiff John Doe II has had numerous close friends expressly threatened by elements of the Iranian government while living abroad.  (Doe II Decl. ¶¶ 18–21.)  He believes and fears that his participation in this lawsuit will result in him and his family being threatened by the Iranian government, and potentially even murdered.  (Doe II Decl. ¶¶ 26– 27.)  Plaintiff John Doe III was previously violently attacked by

supporters of the Islamic Republic (one of whom is now an active personality in the Islamic Republic) while living in the United States.  (Doe III Decl. ¶¶ 10-15.) Doe III's brother has told him not to return to Iran and that his life would be in jeopardy if he did.  (Doe III Decl. ¶ 19.)  As a result, Plaintiffs reasonably believe that they will face persecution from the Iranian government for their participation in this lawsuit.  (*See* Doe I Decl. ¶¶ 31–35; Doe II Decl. ¶¶ 24–26; and Doe III Decl. ¶¶ 20–23.)  Plaintiffs do not believe that their residing in the United States is sufficient protection.  (Doe I Decl. ¶ 36; Doe II Decl. ¶ 27; and Doe III Decl. ¶ 24.)

This case underscores the absorption of SAVAK into the Islamic Republic, and highlights how that regime expanded the blueprint of torture developed by SAVAK and Defendent. Such claims brought in a U.S. court of law will serve as a direct challenge to the Islamic Republic and its legitimacy, and undermine the regimes attempts to suppress these historical facts.

Plaintiff's allegations' include fear of retaliation by security elements within the Islamic Republic including the Iranian Revolutionary Guard Corp (IRGC), based on self-proclaimed communication between the leader of the Monarchists Reza Pahlavi and elements within these forces. This communication has included claims of a potential grant of amnesty in a future Iranian government. Legal claims for accountability disrupt and undermine such political deals and could serve as a basis for repression of retaliation.

Consideration of the three *SMU* factors undeniably weighs greatly in favor of granting pseudonymity as Plaintiffs are challenging Defendant's actions as a government official, would be compelled to disclose information of the utmost intimacy regarding their torture, and believe Iran will persecute them for their participation in this lawsuit. Plaintiffs have a substantial privacy right warranting pseudonymity.

**B.  Under all the circumstances of this case, Plaintiffs' privacy concerns outweigh the presumption of openness in judicial proceedings.**

The totality of the circumstances indicates that Plaintiffs' privacy concerns outweigh the presumption of openness as Plaintiffs reasonably expect, absent pseudonymity, to be faced with violence and physical harm and their pseudonymity does not pose a unique threat of fundamental unfairness to the defendant. Moreover, the public interest is best served by allowing pseudonymity in this matter.  Under the second step of the anonymity analysis, courts "carefully review *all* the circumstances of a given case."  *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1247 (quoting *Plaintiff B*, 631 F.3d at 1316) (emphasis in original). The Eleventh Circuit has identified such additional factors to expressly include whether plaintiffs are threatened with violence or physical harm absent anonymity

and whether anonymity poses a unique threat of fundamental unfairness to the defendant. *Ibid*.; *see also Plaintiff B*, 631 F.3d at 1316.

### 1. Disclosure of Plaintiffs' identity would place Plaintiffs at substantial risk of retaliatory violence.

Plaintiffs should be granted pseudonymity because, absent it, Plaintiffs face substantial threat of retaliatory violence from elements associated with the Iranian government and from individuals who support the return of the Iranian monarchy. The Eleventh Circuit, along with other courts, has identified whether plaintiffs are threatened with violence or physical harm absent anonymity to weigh in favor of granting anonymity. *See In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1247; *see also C. S. v. Choice Hotels Int'l, Inc.*, No. 2:20-CV-635-JES-MRM, 2021 WL 2792166 AT *4–5 (M.D. Fla. June 11, 2021) (finding potential risk of retaliation still weighed in favor of permitting plaintiff to proceed pseudonymously); *Plaintiff B*, 631 F.3d at 1316; *Doe v. I.N.S., U.S. Dep't of Just.*, 867 F.2d 285, 286 n. 1 (6th Cir. 1989) (permitting anonymity 'to protect the petitioner's family...from possible reprisals'); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Stegall*, 653 F.2d at 185-86.

As outlined above, supra section III.A.3, Plaintiffs reasonably believe that if they are denied pseudonymity, then they will be violently targeted and persecuted

by elements and supporters of the Iranian government for their participation in this lawsuit, despite residing abroad.  Additionally, Plaintiffs reasonably believe that if denied pseudonymity, then they will also be personally violently targeted by those who support the return of the Iranian monarchy, known as monarchists.  (Doe I Decl. ¶ 41; Doe II Decl. ¶ 40; and Doe III Decl. ¶ 34.)  Similar to the Plaintiffs in *Stegall*, "[a]lthough they do not confess either illegal acts or purposes, the [plaintiffs] have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186 (weighing threats of violence generated by this case in favor of maintaining the Does' anonymity).

Since 2022, monarchists have been involved in several violent incidents in Iranian protests including sexual assaults and the beating of perceived opponents. (Compl. ¶ 137.)  Plaintiffs are all aware of incidents involving monarchists acting violently towards those who do not support the restoration of the monarchy to Iran. (Doe I Decl. ¶ 42; Doe II Decl. ¶¶ 32–37; and Doe III Decl. ¶¶ 30–32.)  Plaintiffs reasonably believe that their participation in this lawsuit, which details and seeks accountability for the human rights violations they faced under the monarchy, will undeniably mark them as anti-monarchist.  (Doe I Decl. ¶ 40; Doe II Decl. ¶ 31; and Doe III Decl. ¶ 29.)  Plaintiff John Doe II has previously been personally threatened by monarchists and believes that he will be targeted again for his

participation in this lawsuit.  (Doe II Decl. ¶¶ 32, 36, 40.)  Plaintiffs have seen monarchists attacking people in demonstrations and/or starting fights at rallies. (Doe I Decl. ¶ 42; Doe II Decl. ¶ 37; and Doe III Decl. ¶¶ 30–32.)  Plaintiffs have also seen social media posts by Crown Prince Reza Pahlavi's wife calling for the death of opponents to the monarchy.  (Doe I Decl. ¶ 43; Doe II Decl. ¶ 38; and Doe III Decl. ¶¶ 33.)

Defendant Sabeti was an influential official under the Shah's regime and has reportedly served as an advisor for Crown Prince Reza Pahlavi, the leader of the monarchist faction of Iranians.  (Compl. ¶ 138.)  And Defendant Sabeti's daughter is on the advisory council for The National Union for Democracy in Iran, an organization affiliated with the Monarchist movement in the United States.  (*Ibid*.) Because of these ties, Plaintiffs reasonably believe that monarchists will perceive Plaintiffs as an enemy due to their participation in this lawsuit against Defendant Parviz Sabeti.  (Doe I Decl. ¶ 40; Doe II Decl. ¶ 31; and Doe III Decl. ¶ 29.) Plaintiffs reasonably fear that their participation in this lawsuit may put their lives at risk from monarchists.  (Doe I Decl. ¶ 41; Doe II Decl. ¶ 40; and Doe III Decl. ¶ 34.)  Defendant Sabeti is widely recognized as an architect of the institutionalization of torture in Iran, including the use of forced public recantations obtained through torture.  (Compl. ¶ 5.)  Defendant used violence and intimidation as a means of maintaining political power.  (Compl. ¶ 6.)  Plaintiffs

reasonably believe that he may continue to use violence and intimidation to protect himself from this lawsuit and maintain the influence he has now. (Doe I Decl. ¶ 47; Doe II Decl. ¶ 44; and Doe III Decl. ¶ 38.)

Pseudonym status is warranted to shield Plaintiffs from retaliatory violence.

## 2. Granting Plaintiffs' motion will not compromise Defendant's ability to present a full defense.

Plaintiffs' request for pseudonymity should be granted as it will not present a unique threat of unfairness to Defendant Sabeti. The Eleventh Circuit considers whether anonymity poses a unique threat of fundamental unfairness to the defendant in weighing the totality of the circumstances. *See In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1247; *see also Plaintiff B*, 631 F.3d at 1316. Where the public is barred from knowing the identity of a plaintiff, but the defendant is made aware of the identity, the defendant is not prejudiced in preparing their defense. *See Plaintiff B*, 631 F.3d at 1318–19; *Florida Abolitionist, Inc. v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 2017535 (M.D. Fla. May 1, 2018); *C. S. v. Choice Hotels Int'l, Inc.*, No. 2:20-CV-635-JES-MRM, 2021 WL 2792166 at *6 (M.D. Fla. June 11, 2021) (finding that it was not unfair even where plaintiff's counsel made public media statements about the litigation).

Given their reasonable personal fears of Defendant Sabeti due to their understanding of his willingness to do them harm and his connections with violent

and dangerous individuals (*see* Doe I Decl. ¶¶ 44–46; Doe II Decl. ¶¶ 41–43; and Doe III Decl. ¶¶ 35–37), Plaintiffs would request their identity be withheld even from Defendant. Due to the events giving rise to Plaintiffs' claims occurring in Iran, Plaintiffs do not expect much, if any, documentary evidence remains in any party's possession. It is expected that much of the discovery for this case will be effectively conducted through depositions, which Plaintiffs are willing to participate in. Plaintiffs contend that Defendant will be able to fully defend himself similarly and any prejudice would be minimal. However, if this Court deems it necessary, Plaintiffs will agree to provide their identities to Defendant subject to a protective order limiting Defendant's disclosure of their identities.

In one of the landmark cases on this issue—*Does I thru XXIII v. Advanced Textile Corp.*—the Ninth Circuit stated, "[w]e recognize that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses. In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings, *see* Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name, *see* Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case." *Advanced Textile Corp.*, 214 F.3d at 1069. It is well established that when balancing the different interests involved in

cases such as these, "courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." *Ibid*.

For the reasons explained above, Plaintiffs believe that Defendant can defend this lawsuit without knowing their identities. Should the Court order, Plaintiffs are also willing to share their identities with Defendant in a conditional, non-public manner. Accordingly, their request for pseudonymity is not prejudicial to Defendant.

### 3. The public's interest is better served by allowing Plaintiffs to proceed pseudonymously.

Furthermore, in weighing the totality of the circumstances of Plaintiffs' request for pseudonymity, this Court should consider that the public interest is better served by allowing Plaintiffs to proceed pseudonymously. "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them... [and] [t]he assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Stegall*, 653 F.2d at 185. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording and encouraging survivors such as Plaintiffs their day in court with the protection of anonymity. *See*, *e.g.*, *Doe v. Del Rio,* 241 F.R.D. 154, 157 (S.D.N.Y. 2006).

The enforcement of federal human rights laws benefits the public, yet the identification of individual plaintiffs does little, if anything, to further community welfare. And allowing Plaintiffs to proceed pseudonymously in no way limits the public's ability to monitor and discuss this case. Instead, the greater public interest would be significantly harmed if, in identifying Plaintiffs and other survivors like them, resulted in an overall chilling effect on all human rights violation litigation and survivors willing to come forward. International human rights violations are already incredibly difficult to combat. Suits to enforce statutory rights benefit the general public and courts have recognized that measures that may have a chilling effect on a party's willingness to litigate are against public policy. *See Advanced Textile Corp.*, 214 F.3d at 1072–73. Denying victims of human rights violations committed abroad pseudonymity in United States courts in circumstances like these would only serve to weaken the viability of the Alien Tort Claims Act and the Torture Victims Protection Act (28 U.S.C. § 1350) as a means of recovery for these wrongs, making the United States a more hospitable country for its offenders to flee to.

In light of the fact that the public's interest in this action is better served by allowing Plaintiffs to proceed pseudonymously, Plaintiffs' request should be granted.

## <u>CONCLUSION</u>

When the totality of the circumstances are evaluated and weighed, Plaintiffs have substantial privacy and safety interests that outweigh the presumption of open judicial proceedings and they should be permitted to proceed pseudonymously. For these reasons, Plaintiffs request that this Court grant their motion to proceed pseudonymously, under the pseudonyms John Does I through III, respectively.

### Local Rule 3.01(g) Certification

I have been unable to confer with the opposing party regarding my special admission because the opposing party has not yet been served or appeared in this case, and I do not have a telephone number or email address for the opposing party.

Dated: February 10, 2025

By: */s/ Michelle J. Correll*
Michelle J. Correll, Esq.
(Fla. Bar No. 1029106)
**CORRELL LAW P.A.**
150 E. Palmetto Park Road, Suite 800,
Boca Raton, FL 33432
Telephone: (310) 425-3866
michelle@correll-lawfirm.com

*Attorneys for Plaintiffs [Does I thru III]*