UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE I, JOHN DOE II, and
JOHN DOE III,

v.  Case No: 6:25-cv-219-GAP-DCI

PARVIZ SABETI,

        Defendants.

**ORDER**

This cause comes before the Court on Plaintiffs' Motion for Leave to Proceed by Pseudonym. Doc. 4. Defendant has not yet appeared in the case.

**I.    Background**

Plaintiffs John Doe I, John Doe II, and John Doe III ("Plaintiffs") filed suit against Defendant Parviz Sabeti ("Defendant") alleging that he led and oversaw secret policing, abuse, and torture during the government of Mohammad Reza Pahlavi, the former Shah of Iran. Doc. 1, ¶ 1. The Complaint details Defendant's alleged involvement with the SAVAK—the intelligence organization and secret police force of the former Shah. *See id.* It also highlights that Plaintiffs were denied due process throughout a broad array of extrajudicial detentions, imprisonments, and repetitive mental and physical torture overseen by Defendant. *See, e.g., id.,* ¶¶ 3-4. Plaintiffs seek redress under the Alien Tort Statute and the Torture Victims

Protection Act pursuant to 28 U.S.C. § 1350, and under a slew of Florida common law claims.[1] *Id.*, ¶¶ 142, 143-220.

Defendant has primarily lived outside of the public eye since fleeing Iran in the 1980s. *Id.*, ¶ 7. However, Plaintiffs allege that he has been emboldened to step out after political unrest materialized in Iran in 2023, producing a seven-hour documentary to rehabilitate his image. *Id.* The Complaint asserts that, upon information and belief, Defendant is a resident of Orlando.[2] *Id.*, ¶ 23.

Along with their Complaint, Plaintiffs simultaneously filed a Motion for Leave to Proceed by Pseudonym. Doc. 4. Generally, Plaintiffs suggest that if their identities are revealed they will suffer "real threats to [their] safety posed by potential retaliation from the Iranian government and from violent supporters of the former monarchy." *Id.* at 2. Along with the former Shah's son, Defendant is being named as a possible successor to any new government if the current regime is overthrown. *Id.*, ¶ 12. Plaintiffs bring this action under pseudonyms because they fear retaliation and repression. *Id.*, ¶¶ 9, 8-14.

Though Defendant has yet to appear in this case, the Court now issues an

---

[1] The Complaint also refers to Customary International Law, the UN Charter, the UN Declaration on Human Rights, and various other international treaties regarding the prohibition of torture as grounds for relief—however nowhere does it specifically assert claims for relief under each. *See* Doc. 1, ¶ 142; *id.*, ¶¶ 143-220.

[2] Plaintiffs' proposed summons lists an address in Windermere, FL. Doc. 1-2.

- 2 -

order on this sensitive, threshold matter, subject to reconsideration upon appearance by the Defendant. *See Plaintiff B v. Francis*, 631 F.3d 1310, 1314, 1315-19 (11th Cir. 2011) (reversing and remanding a district court's denial of a motion to proceed anonymously, but finding no error in court's procedure of preliminarily granting the motion before revisiting the issue prior to trial).

**II.   Legal Standard**

Federal Rule of Civil Procedure ("FRCP") 10(a) requires that any pleadings filed in federal court "must name all the parties." "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Plaintiff B*, 631 F.3d at 1315 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir.1992)). While this rule creates a strong presumption against anonymity, "the rule is not absolute." *Id*. FRCP 26(c)(1) vests in the trial court discretion over litigants' requests for protection from "annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process.

"A party may proceed anonymously in a civil suit in federal court by showing that he has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Plaintiff B*, 631 F.3d at 1315-16 (internal quotations and citations omitted). However, there is "no hard and fast formula for ascertaining whether a party may sue

anonymously." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).[3] In ruling on a motion to remain anonymous, district courts must "consider the circumstances of the case and…weigh the relevant factors." *Plaintiff B*, 631 F.3d at 1315.

District courts consider three principal factors when weighing whether to allow party anonymity: (1) "are the plaintiffs seeking anonymity challenging government activity?"; (2) "will they be required to disclose information of the utmost intimacy?"; and (3) "will they be compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution?" *Id.* at 1316 (citing *Stegall*, 653 F.2d at 185). Courts have also considered factors "such as whether the plaintiffs were minors…[and] whether they were threatened with violence or physical harm by proceeding in their own names." *Id.* (citing *Stegall*, 653 F.2d at 186).

While Courts should also analyze whether the requested anonymity "poses a unique threat of fundamental unfairness to the defendant," his "general plea for openness is not convincing when stacked against strong evidence supporting a need for anonymity." *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (internal quotations and citations omitted).

---

[3] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**III.  Analysis**

Plaintiffs have sufficiently shown that anonymity is appropriate in this circumstance. Indeed, nearly all of the factors outlined above weigh heavily in favor of preserving Plaintiffs' anonymity in this case. *See Stegall*, 653 F.2d at 186.

The first factor emanates from the policy that, "[w]hile such suits involve no injury to the Government's reputation, the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm." *Doe v. Frank*, 951 F.2d 320, 323-4 (11th Cir. 1992) (internal quotations omitted). Though Defendant in this case is an individual, Plaintiffs bring their challenge against him solely for conduct committed in his capacity as an official of the government of Iran—particularly, as Deputy Director of SAVAK and Chairman of the *Komiteh Moshtarak*. *See* Doc. 1, ¶ 1. Concerns which might normally arise from the filing of such grave allegations against a private defendant are further allayed in this instance because of the "well-documented" nature of widespread torture claims against this Defendant. *Id.*, ¶¶ 30, 64-69; Doc. 4 at 4, n.1 (noting that Defendant even has a Wikipedia entry); *see also, e.g.*, Victor A. Lusinchi, *Torture and Denials of Rights Laid to Iran by Jurists' Group,* THE NEW YORK TIMES, May 29, 1976 (describing that a report by the International Commission of Jurists found political suspects in Iran "are subjected to psychological and physical torture" and, despite noting his denials, recognizing that "the much-feared Chairman Sabeti" played a

key role in ordering political arrests) (internal quotations omitted); Richard T. Sale, *SAVAK: A Feared and Pervasive Force*, THE WASHINGTON POST, May 9, 1977 ("The SAVAK are spoken of as people who know everything, hold everything in their hands and have friends and helpers everywhere.").

Defendant's status as an individual, and not a government, does not invoke the normal reputational concerns. *See Frank*, 951 F.2d at 323-4. Given the longstanding and widespread acknowledgement of torture allegations against Defendant, allowing Plaintiffs to proceed anonymously here does not risk burdening him with any further reputational harm. Accordingly, this factor does not weigh against granting Plaintiffs' motion.

Second, it is clear that, absent anonymity, Plaintiffs will be "required to disclose information of the utmost intimacy." *Plaintiff B*, 631 F.3d at 1315. To be sure, "personal embarrassment alone does not justify proceeding under a pseudonym." *Doe v. Neverson*, 820 F.App'x 984, 987 (11th Cir. 2020). However, where the issues in the case "involve descriptions of [Plaintiffs'] in various stages of nudity…while they were minors," they "could not be of a more sensitive and highly personal nature." *Plaintiff B*, 631 F.3d at 1317. Additionally, courts have found that experiences including physical assaults and "psychological torment" qualify as matters of the "utmost intimacy." *C.S. v. Choice Hotels Int'l, Inc.*, No. 2:20-cv-635-JES-MRM, 2021 WL 2792166, *4 (M.D. Fla. Jun. 11, 2021).

Plaintiffs in this case will describe the traumatizing and intimate details of their torture allegations, "which include[] psychological torment, beatings, whippings…and torture…directed at their genitals." Doc. 4 at 12; Doc. 1, ¶¶ 3, 76, 88, 92, 93, 97. Moreover, John Doe III was a minor when he was allegedly arrested and tortured. Doc. 1, ¶ 94; *see also Stegall*, 653 F.2d at 186 ("A final factor we find especially persuasive is the fact that plaintiffs are children."). All three Plaintiffs here consider the details of their alleged torture, which they do not openly share even among their own families, to be "deeply personal, humiliating, and difficult to talk about" Doc. 4 at 12-13. For John Doe II, despite years of therapy, talking about his torture experiences can cause post-traumatic stress reactions, "including full body shakes and feelings of dizziness." Doc. 1, ¶¶ 92-93. It is plain that the deeply personal and scaring nature of Plaintiffs' experiences weigh in favor of anonymity. *See Plaintiff B*, 631 F.3d at 1315.

Whether Plaintiffs would be compelled, absent anonymity, to admit intent to engage in illegal conduct merges with another factor recognized by the *Stegall* court—the "threats of violence generated by this case." 653 F.2d at 186. It is unclear whether this lawsuit would, in of itself, be considered criminal activity in Iran. However, Plaintiffs allege the "reasonable belief" that the current Iranian government would view this action as politically dissident, and "has repeatedly shown a willingness to target (and even execute) its political dissidents abroad."

Doc. 4 at 15.

Indeed, John Doe I has had "repeat, threatening contact with elements of the Iranian government throughout his time in the United States" and John Doe II "has had numerous close friends expressly threatened by elements of the Iranian government while living abroad." *Id.* at 14-15. Most worryingly, John Doe III alleges that he "was previously violently attacked by supporters of the Islamic Republic…while living in the United States." *Id.* at 15-16. John Doe III's family has warned him not to return to Iran because his "life would be in jeopardy if he did." *Id.* at 16. Plaintiffs' very serious allegations regarding the threat of violent retaliation to their lawsuit weigh immensely in favor of granting their motion to proceed via pseudonyms. *See Stegall*, 653 F.2d at 186 (recognizing the gravity of a "showing of possible threatened harm and serious social ostracization based upon militant religious attitudes").

Finally, in considering the "balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings," it is plain that in this case the chips fall in favor of anonymity. *Stegall*, 653 F.2d at 186. Based on their allegations, Plaintiffs have a reasonable fear of violent retaliation from several quarters for filing and participating in this case—indeed, they "may expect extensive harassment and perhaps even violent reprisals if their identities are

disclosed." *Id.*; Doc. 4 at 18-19; Doc. 1, ¶ 137; Doc. 4-2, ¶ 42; Doc. 4-3, ¶¶ 32-37; Doc. 4-4, ¶¶ 30-32.

Defendant has been accused of similar torture and extrajudicial exercise of authority in the past; his inability to personally identify Plaintiffs here does not create the specter of any new reputational or economic harm such as would outweigh Plaintiffs' fear of violent reprisal. *See* Doc. 1, ¶¶ 30, 64-69; Doc. 4 at 4, n.1 (noting that Defendant even has a Wikipedia entry). Moreover, Plaintiffs' willingness to confidentially permit their identification for limited discovery purposes underlines that their anonymity poses no unique threat of fundamental unfairness to Defendant in his ability to defend himself. *See Plaintiff B*, 631 F.3d at 1318-19.

Considering the totality of the circumstances at the outset of this case, and subject to reconsideration upon motion of the Defendant, the Court finds that "the threats of violence generated by this case…tip the balance against the customary practice of judicial openness." *Stegall*, 653 F.2d at 186.

### IV. Conclusion

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Leave to Proceed by Pseudonym is hereby **GRANTED.**

If Defendant objects to Plaintiffs' proceeding by pseudonym, he shall file a Motion for Reconsideration of this Order **within thirty days of his first appearance**.

**DONE** and **ORDERED** in chambers in Orlando, Florida on February 14, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties