# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

_____

JOHN DOE I, JOHN DOE II, and )
JOHN DOE III, )
  )
                     *Plaintiffs,* )   Case No. 6:25-cv-219-GAP-
  )   DCI
v. )
  )
PARVIZ SABETI, )
  )
                  *Defendant.* )

_____

## <u>MOTION FOR RECONSIDERATION OF FEBRUARY 14, 2025 ORDER</u>

The Defendant, Parviz Sabeti, in accordance with the Court's Orders (D.E. 16, 50), moves for reconsideration of the Court's February 14, 2025 *ex parte* Order (D.E. 16) (the "Pseudonym Order"), which granted the Plaintiffs' Motion for Leave to Proceed by Pseudonym (D.E. 4) (the "Pseudonym Motion"), subject to Mr. Sabeti's right to move for reconsideration of the Order.

In early April 2025, shortly before Mr. Sabeti filed his initial challenge to the Pseudonym Order (D.E. 41) (which he now refiles to comply with the Court's orders), Mr. Sabeti's counsel proposed to the Plaintiffs' counsel a framework for resolving the pseudonym-related issues at this stage of the case. Specifically, Mr. Sabeti agreed not to oppose the Plaintiffs' use of pseudonyms on a temporary basis, provided that the Plaintiffs confidentially disclose their identities to the defense and that Mr. Sabeti retain the right to later challenge

the use of pseudonyms. The Plaintiffs' counsel rejected this proposal and also refused to provide unredacted copies of their filings in support of their motion to proceed anonymously. The Plaintiffs' counsel reaffirmed that position on May 14, 2025, indicating that the Plaintiffs would not confidentially disclose their identities to the defense unless and until the Court has ordered them to do so—even though the Pseudonym Order explicitly contemplates that the Plaintiffs would ***at minimum*** make a confidential disclosure.

As discussed further below, the Plaintiffs' approach here—of withholding their identities from not only the public, but also the defendant and his counsel—would result in manifest, fundamental error and unfairness and would deprive Mr. Sabeti of due process. Mr. Sabeti also moves for reconsideration of factual findings and legal conclusions in the Court's Pseudonym Order, as provided for under the Court's Orders. *See* D.E. 16, 50.

## PRELIMINARY STATEMENT

Mr. Sabeti is an octogenarian immigrant from Iran who, for more than four decades, has lived a productive, peaceful life in the United States as a father, businessman, and advocate for Western democratic values. In this case, the anonymous Plaintiffs bring stale claims against Mr. Sabeti emanating from alleged conduct that occurred in Iran by Iranian government agents against Iranian citizens nearly 50 years ago, when Mr. Sabeti served within *Sazman-e Ettela'at va Amniyat-e Keshvar* ("SAVAK")—The Organization for

2

Information and Security of Iran—during the administration of Shah Mohammad Reza Pahlavi (the "Shah"). *See generally* Am. Compl. (D.E. 47) (the "Complaint").

The Plaintiffs claim that they fear reprisal from the Islamic Republic of Iran due to Mr. Sabeti's former association with SAVAK. Yet, as Mr. Sabeti's Declaration shows, *see* Declaration of Parviz Sabeti ("Sabeti Decl."), Iran's government and its agents have targeted Mr. Sabeti and his family since he fled the country in 1978. The Iranian government has threatened his life, aimed cybersecurity attacks at him and his daughter, and spread disinformation about him. These threats are real. The current Iranian government has executed, imprisoned, and tortured thousands of former officials in the Shah's government. These threats reach far beyond Iran's borders as the Iranian government has successfully assassinated many former members of the Shah's government and continues to kidnap, torture, and murder Iranians who sympathize with or had affiliations with the former Shah of Iran and his family. From the 1980 assassination of Ali Akbar Tabatabaei in Bethesda, Maryland, to the 2023 abduction and execution of Jamshid Sharmahd, the regime has shown no hesitation in pursuing those with links to, or sympathy for, the late Shah of Iran far beyond its borders.[1] To claim that

---

[1] The Islamic Republic of Iran has systematically executed, imprisoned, and tortured former officials who served under the Shah's government—including senior military officers, police chiefs, cabinet ministers, judges, and technocrats. But the regime does not limit its

Mr. Sabeti is associated with the current Iranian regime which has sought his assassination and execution is absurd, alarming, and false.

Moreover, the suggestion that he is preparing to run a security agency or assume official duties in his late 80s or early 90s is not only factually unsupported but patently absurd. Mr. Sabeti seeks only to live out his remaining years in peace with his family, in the country he has called home for decades, surrounded by his family—not to re-enter a political arena he left half a century ago. Whereas the Plaintiffs' travel history remains unknown and unverified, Mr. Sabeti has never returned to Iran since fleeing in 1978 due to credible threats to his life. The very idea of returning to Iran is preposterous given the regime's documented intent to arrest or kill him.

By contrast, Defendant has seen no evidence that the Plaintiffs face any comparable risk. Their submissions are heavily redacted, anonymized, and devoid of detail. We do not know whether any of them have recently traveled to Iran or interacted freely with the regime without consequence—or whether they are associated with other interested political groups.

---

violence to prominent officials. It targets even those with minimal ties to the monarchy, and reaches across continents to do so. Ali Akbar Tabatabaei, a mid-level former press attaché to the Iranian Embassy in Washington under the Shah, was assassinated on July 22, 1980, in Bethesda, Maryland—by an Iranian agent disguised as a postal worker. That killing marked one of the earliest acts of state-sponsored terrorism on U.S. soil. More recently, Jamshid Sharmahd, an Iranian-German pro-monarchist, U.S. resident, and journalist who opposed the regime, was abducted by Iranian intelligence in 2020 while transiting through Dubai and was later smuggled into Iran. He was subjected to torture and later executed.

4

In the absence of concrete, verifiable facts, their claims remain speculative at best—especially when compared to the very real, ongoing danger faced by Mr. Sabeti.

The Plaintiffs further claim, without support, that they fear reprisals from the "Monarchists," who oppose the current Iranian government and seek to reinstate the monarchy to Iran, allegedly because Mr. Sabeti is associated with the Monarchists. This is untrue. Mr. Sabeti is not involved with this political movement.

Although Mr. Sabeti vigorously disputes that he directed, oversaw, or was otherwise involved in the acts alleged in the Complaint, he was amenable to the Plaintiffs' use of pseudonyms on a temporary basis, subject to the conditions stated above. But the Plaintiffs have refused to disclose their identities to the defense, even confidentially, or to provide the defense with the unredacted copies of their filings in support of anonymity, which has made it impossible for Mr. Sabeti to evaluate the Plaintiffs' grounds for seeking pseudonymous treatment. This approach—which has no basis in law, equity, or common sense—would result in fundamental error, depriving Mr. Sabeti of his constitutional right to a proper defense. There is simply no support for this draconian approach and, accordingly, the Court must reject it outright.

Moreover, the Plaintiffs' Pseudonym Motion—which the Court was forced to rely upon, in large part, in the *ex parte* Pseudonym Order—contains

5

several significant misstatements about the factors purportedly supporting anonymity. The Court should now reconsider and reverse these findings.

***First***, the Plaintiffs' arguments concerning a fear of violence are based on the contradictory and implausible allegation that Mr. Sabeti is connected to both the Islamic Republic of Iran (the very regime that compelled Mr. Sabeti to flee Iran amid the overthrow of the Shah's government, and which subsequently persecuted him and has tried to murder him in exile) and to the so-called "Monarchists" (political opponents of the current regime). On this issue, the Plaintiffs fail to show that Mr. Sabeti is linked to the Islamic Republic (an outlandish allegation on its face, given the history of his persecution by the current regime), or to the Monarchists. Further, the Plaintiffs can marshal only the vaguest, most generalized allegations of violence at the hands of the Monarchists based only on purported occurrences that simply have nothing to do with Mr. Sabeti nor pose any direct threat to the Plaintiffs.

***Second***, the Plaintiffs argued that the subject of the Plaintiffs' claims, which purport to challenge official, government conduct, did not weigh against anonymity. But the Plaintiffs ignored the fact that Mr. Sabeti is no longer a government official (and has not been one for almost 50 years), and also improperly claimed that Mr. Sabeti has no protectible reputational interests. Further, the Plaintiffs' erroneous claims were based only on uncorroborated

6

third-party hearsay. These factors weigh strongly ***against*** the use of pseudonyms here.

***Third***, the Plaintiffs argued that the sensitive, intimate nature of the Plaintiffs' claims weighed in favor of anonymity. Although Mr. Sabeti acknowledges that these types of allegations, when true in a proper case, may support anonymity, here, the significant passage of time between the underlying events and the present (almost 50 years in fact), combined with the Plaintiffs' self-described attempts to seek "accountability" through this case, weigh strongly against anonymity.

For all of these reasons, the Court should reconsider its factual findings and legal conclusions in the Pseudonym Order and require the Plaintiffs to proceed using their real identities. At a minimum, if the Court believes that anonymity is appropriate, it must require the Plaintiffs to immediately disclose their identities to the defense, to uphold Mr. Sabeti's due process rights.[2]

---

[2] This motion is supported by Mr. Sabeti's declaration, which the Court may consider in addressing the propriety of pseudonymous treatment. *See, e.g.*, *Doe v. Ala. Dep't of Corr., et al.*, 2025 WL 942750, at *1 n.1 (M.D. Ala. Mar. 27, 2025) (noting that the court considered the plaintiff's declaration in deciding his motion for leave to proceed pseudonymously); *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1248 (11th Cir. 2020) (explaining that a request for pseudonymous treatment must be supported by "specific evidence"); Pseudonym Order at 1, 2, 7, 8, 9 (considering the Plaintiffs' allegations in the Pseudonym Motion, as reflected in their supporting declarations, in granting the Motion).

## LEGAL STANDARD

As noted, the Court has ordered Mr. Sabeti to challenge the Plaintiffs' use of pseudonyms by filing a "motion for reconsideration" of the Pseudonym Order. *See, e.g.*, D.E. 16 at 3, 9; D.E. 50 at 2. A motion for reconsideration, however, presupposes that the parties had a full and fair opportunity to address the issues resulting in a judicial order. *See, e.g., Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). Because the Court issued the Pseudonym Order on an *ex parte* basis, without having heard from Mr. Sabeti at all, it would be unfair and illogical for the Court to hold Mr. Sabeti to the higher reconsideration standard when Mr. Sabeti did not have an opportunity to respond to the Pseudonym Motion to begin with.

Accordingly, Mr. Sabeti submits that the Court must resolve this motion for reconsideration—which responds, for the very first time, to the Plaintiffs' Pseudonym Motion—under a *de novo* standard, not a reconsideration standard, which is consistent with courts' approaches in this very situation. *See, e.g., Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1085 (N.D. Ill. 2004) ("However, because we granted Wyler's motion to dismiss without allowing Molex the opportunity to brief the issues, we will not apply these [reconsideration] standards strictly here."); *Doe v. De Amigos, LLC*, 2012 WL 13047579, at *1 n.1 (D.D.C. Apr. 30, 2012) (applying a *de novo* standard for the defendant's challenge to anonymity, instead of a reconsideration standard,

8

because the court had issued the underlying order *ex parte*); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1053 (N.D. Cal. 2020) (holding that the defendant's motion to compel the disclosure of the plaintiffs' identities was not an improper "motion for reconsideration," because the defendant never had an opportunity to respond to the court's *ex parte* order). Indeed, a *de novo* standard is the only legal standard that would safeguard Mr. Sabeti's constitutional right to be heard regarding anonymity, the deprivation of which would be reversible error. *See, e.g.*, *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022).

For all of these reasons, the Court must apply a *de novo* standard here.[3]

### THE COURT HAS ALREADY CONCLUDED THAT CONFIDENTIAL DISCLOSURE TO THE DEFENSE IS REQUIRED

As a threshold matter, there is no support for the Plaintiffs to withhold their identities from the defense. This is not a debatable legal proposition. In fact, in the Pseudonym Order, the Court already concluded that the Plaintiffs' confidential disclosure of their identities to the defense would help ameliorate the prejudice to Mr. Sabeti of pseudonymous treatment. *See* Pseudonym Order

---

[3] In any event, and without waiver of Mr. Sabeti's request for *de novo* review, Mr. Sabeti could also satisfy the reconsideration standard. "Courts in this District recognize 'three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice.'" *Adams v. Boeneman*, 335 F.R.D. 452, 454 (M.D. Fla. 2020). Reconsideration is appropriate here because, most notably, by issuing the Pseudonym Order on an *ex parte* basis, the Court necessarily failed to account for Mr. Sabeti's countervailing arguments and evidence—which is precisely why the Court must consider this motion *de novo*.

at 9. And, significantly, in their Pseudonym Motion, the Plaintiffs **agreed** to confidentially disclose their identities to the defense "[s]hould the Court order." Pseudonym Motion at 21–23. The Court has so ordered.

Moreover, there is no basis for the Plaintiffs to renege on their commitment to confidentially disclose their identities, or to violate the Court's Order. Indeed, in the Motion, the Plaintiffs failed to cite a single authority permitting the Plaintiffs to shield their identities from the defense. This omission is not surprising, given that courts universally order plaintiffs to disclose their identities to the defense, even when they have concluded that anonymity is appropriate. *See, e.g.*, *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) ("If a court grants permission, it is often with the requirement that the real names of the plaintiffs be disclosed to the defense and the court but kept under seal thereafter."); *Doe v. Daedone*, Case No. 24-CV-4434, 2024 WL 3897078, at *5 (E.D.N.Y. Aug. 22, 2024) (requiring disclosure to the defense within three days of the defendants' appearance in the case); *Minor A.C. v. Forest Trail Acad., LLC*, 2024 WL 5245890, at *2 (S.D. Fla. Dec. 30, 2024) (granting anonymity, and stating that "Plaintiff's identity shall be available to" defense counsel, subject to confidentiality protections).

Confidential disclosure is, in short, a **minimum** due process requirement in this case. Without the Plaintiffs' identities, Mr. Sabeti will be unable to avail himself of his constitutional right to properly investigate the

10

Plaintiffs' claims and to prepare an adequate defense. Accordingly, even if the Court maintains that anonymity is appropriate, it must order the Plaintiffs to immediately disclose their identities to the defense.

## THE RELEVANT LEGAL FACTORS
## WEIGH STRONGLY AGAINST ANONYMITY

As to the merits of the Pseudonym Motion and the Court's Order, Mr. Sabeti respectfully submits that the record, especially in view of his response and declaration, does not support pseudonymous treatment in this case.

The Eleventh Circuit has cautioned that, because "[l]awsuits are public events," a plaintiff "should be permitted to proceed anonymously" only in "exceptional cases." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). As the Court acknowledged, in considering the propriety of anonymity, courts consider the totality of the circumstances, including the following factors:

(1)    Whether the party seeking anonymity is challenging government activity;

(2)    Whether the party would be compelled, absent anonymity, to disclose information of the utmost intimacy;

(3)    Whether the party would risk criminal prosecution;

(4)    Whether the party is a minor;

(5)    Whether the party faces a real threat of physical harm absent anonymity; and

(6)    Whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant.

11

*In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020); *see also* Pseudonym Order at 4.

Relying on the Plaintiffs' *ex parte* filing, in the Pseudonym Order, the Court noted that "nearly all" of these factors "weigh heavily in favor of preserving Plaintiffs' anonymity in this case." Pseudonym Order at 5. As shown below, however, these factors, individually and collectively, weigh decisively against anonymity.

## A. Neither Mr. Sabeti, Nor Anyone in His Orbit, Poses a Real Risk of Violence or Other Harm to the Plaintiffs or to Anyone Else.

***First***, the Court concluded that two factors—the risk of criminal prosecution in Iran and the threat of violence—"merged" together and weighed in favor of anonymity. Order at 7–8. As to this factor, the Court determined that the Plaintiffs' "very serious allegations regarding the threat of violence"— including from the Islamic Republic and its opposition faction, the Monarchists—"weigh immensely in favor of granting" anonymity. *Id.* at 8. The Court's conclusion regarding this factor is erroneous for at least two reasons.[4]

First, the Plaintiffs' allegations about imminent harm, even if sincerely held, are contradictory, unfounded, and ultimately implausible. As noted, the

---

[4] As stated, the Plaintiffs redacted, and filed under seal, the key allegations of their declarations that appear to discuss the grounds for their fears of violence. D.E. 4-1 through D.E. 4-4. Because the Plaintiffs' counsel has refused to provide us with unredacted copies of those declarations, we have been unable to review or assess the events and circumstances underlying the Plaintiffs' allegations as to this factor.

essence of the Plaintiffs' allegations about violence is the contradictory assertion that Mr. Sabeti is aligned with **both** the Islamic Republic (which overthrew and ousted the Shah's regime), and the Monarchists (who purportedly seek to restore the Iranian monarchy). But Mr. Sabeti has no allegiances to, much less a desire to ever engage with, the Islamic Republic. Indeed, it was the Islamic Republic that "call[ed] for [Mr. Sabeti's] arrest and that of other government officials" amid its overthrow of the Shah's government; which executed several high-level SAVAK officials and thousands of other former government officials; and which attempted to persecute Mr. Sabeti even after he had fled Iran. Sabeti Decl. at ¶¶ 8, 14, 15, 16, 17, 18, 19, 20, 36. Simply put: Mr. Sabeti "ha[s] no ties with government officials of the Islamic Republic of Iran." *Id.* at 11. Instead, to this day, the Islamic Republic continues to target and harass Mr. Sabeti and his family, including by infiltrating their email accounts and electronic devices—all of which US federal law enforcement authorities continue to monitor and investigate. *See id.* at ¶¶ 19–20. In addition, Mr. Sabeti has no demonstrated ties to the Monarchists and, in fact, denies any involvement with that exile group. *See id.* at ¶¶ 31–32.

Second, with all respect to the Plaintiffs' fears of harm, their allegations concerning this factor are vague, generalized, and completely devoid of any nexus to Mr. Sabeti. As for their allegations of violence from the Islamic

13

Republic, the Plaintiffs appear to allege in their declarations that they were the targets of surveillance by the Islamic Republic (*see* Child Decl. at ¶¶ 7–21, John Doe I Decl. at ¶¶ 8–36); that they generally fear acts of repression by the Islamic Republic (*see* John Doe II Decl. at ¶¶ 17–27); and that they experienced acts of repression from the Islamic Republic in the past (*see* John Doe III Decl. at ¶¶ 9–24). And the Plaintiffs' allegations concerning fears of harm from the so-called "Monarchist" faction are even more disjointed. Indeed, the Plaintiffs' allegations about violence from the Monarchists center on the assertion that they fear the Monarchists because this faction is purportedly known to stir violence at Iranian political protests. *See, e.g.*, John Doe II Decl. at ¶¶ 28–40.

These fears of harm, even if sincere, are too generalized and speculative to support anonymity in this case. Just as important, these allegations of harm simply have nothing to do with Mr. Sabeti—indeed, they seem to **mirror** the very same persecution that he has faced from the Islamic Republic—and, thus, it would be senseless for Mr. Sabeti to suffer the prejudice of the Plaintiffs' anonymity based on their generalized, disconnected fears of violence. Accordingly, here, the Plaintiffs' generalized allegations of violence from political factions, to which Mr. Sabeti has no connection, and the actions of which have no apparent connection to the subject matter of the case, weigh decisively against anonymity. *See, e.g.*, *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d at 1248 (holding that "general evidence" about fears of violence abroad

14

did not support the conclusion that the plaintiffs would "face similar risks of harm" in the United States). The Plaintiffs also have made no showing that they face serious threat *in* the United States where they have resided without persecution for decades.

Finally, after the filing of their Pseudonym Motion, the Plaintiffs proffered additional evidence of purported threats of violence. *See* D.E. 44; Am. Compl. at ¶¶ 145–51. With respect to the email to the Plaintiffs' counsel from the email account "moradiamirhossein18@gmail.com," which allegedly emanates from "an individual located in Tehran" (D.E. 44-1 at ¶ 5), Mr. Sabeti categorically denies that he (or anyone in his orbit) sent, directed, oversaw, or had anything to do with this email. Sabeti Decl. at ¶ 34. Indeed, this email appears to mirror some of the menacing messages that Mr. Sabeti's family members have received since the filing of this case. As just one example, one of Mr. Sabeti's daughters, Pardis Sabeti, was "tagged" in an Instagram post, which showed an individual pictured outside of Ms. Sabeti's residence in Boston holding up his middle finger. *Id.* at ¶ 37. The caption of that photo referenced this lawsuit. *Id.* In yet another example, Ms. Sabeti has begun to receive cryptic messages on WhatsApp—from unknown and what appear to be overseas numbers—claiming that Mr. Sabeti "is being targeted by a hit squad," saying that "[t]hey've been tailing you and the old man hard—your place, all your usual routes," and urging Ms. Sabeti to contact the sender, who has vowed

to protect the Sabeti family from this alleged "hit squad." *Id.* When Ms. Sabeti

did not respond, they began contacting Mr. Sabeti's other daughter. *Id.* In both

cases, the messages contain images of the family's residences. Excerpts of these

threatening communications to the Sabeti family appear below:







peter2khanemazendaran Days ago parviz sabeti, the former savak deputy commander who oversaw torture and a continuation of the experiments nazis like mengele did, and who currently lives at 5367 vineland road in orlando, was sued by several victims who filed a lawsuit in the federal court in orlando https://peteriikhanemazendaran.godaddysites.com/f/ on-parviz-sabeti-sued-in-america-for-savak-torture While technically the american court has no jurisdiction, the plaintiffs, who choose to be anonymous, point out the continuing ties parviz has with the Iranian government. While they reference his daughter @pardis_sabeti, of 486 commonwealth avenue in boston, who is continuing these experiments at @sabeti_lab harvard along with making bioweapons and genetic manipulation, I know of this as I ran afoul of one of their bioweapons in February 2015 when the zobians @zobian @aram_zobian used one on me at an armenian genocide event in watertown, and pardis told my cousin Homa Khanoum in 2020 that covid was a bioweapon, as are the vaccines. Essentially the sabetis are continuing their activities to make themselves useful, yet it is odd these plaintiffs are choosing to remain anonymous. Something is afoot here. #Iran #orlando #boston #humanrights #torture #bioweapons #ایران

February 28

---

⁵ For Ms. Sabeti's safety, screenshots have been cropped to remove photographs of Ms. Sabeti's residence.



The Plaintiffs also now claim that "Dr. Shahram Makoui," a purported

Monarchist with "a criminal record involving domestic violence," has called for

violence against the Plaintiffs through certain posts on the social media

platform X. *See, e.g.*, Am. Compl. at ¶ 147; D.E. 44-1 at ¶¶ 3–4. The Plaintiffs

further claim that Makoui has recently been in communication with Mr.

Sabeti. *See, e.g.*, Am. Compl. at ¶ 149. Although Mr. Sabeti did briefly speak

with Makoui by telephone on March 10, 2025, the purpose of that brief discussion was limited: for Mr. Sabeti to tell Makoui *not* to make any public statements referencing Mr. Sabeti or the lawsuit. Sabeti Decl. at ¶ 33. Mr. Sabeti had never had any contact with Makoui prior to or since that brief call. Mr. Sabeti entertained this brief telephone discussion with Makoui, recommended by an intermediary, with the express purpose of relaying his strong disapproval of the content of the post and persuading Makoui not to further stoke tensions on social media, including regarding the subject matter of this case. *Id.* Aside from this brief interaction, Mr. Sabeti has never spoken with Makoui, and Mr. Sabeti has no control over Makoui's social media posts or other communications. *Id.* To the extent that Makoui's social media posts could be interpreted as calls to violence or harassment, Mr. Sabeti vehemently disavows such calls. *Id.*

## B. Mr. Sabeti Is a Private Individual, Not a Government Official Sued in an Official Capacity.

*Second*, as to the "government activity" factor, as the Court correctly acknowledged, this factor, which does not weigh against anonymity when the defendant is a government entity or agent, "emanates from the policy that" lawsuits challenging government action "'involve no injury to the Government's reputation,'" although "'the mere filing of a civil action against other private parties may cause damage to their good names and reputation

18

and may also result in economic harm.'" Pseudonym Order at 5 (quoting *Frank*, 951 F.2d at 323–24). The Plaintiffs argued, and the Pseudonym Order concluded, that the subject matter of the Plaintiffs' claims, which purport to challenge government activity from the 1970s stemming from Mr. Sabeti's service in SAVAK, did not weigh against anonymity. *Id.* at 5–6. This conclusion is erroneous for at least three reasons.

First, as the Court correctly acknowledged, Mr. Sabeti is a private individual. *Id.* at 5. Indeed, Mr. Sabeti has not served in any government office since 1978, when the Islamic Republic overthrew and ousted the Shah's regime. Sabeti Decl. at ¶¶ 2, 8, 9, 12. Moreover, the Islamist regime, which has been in control of Iran since 1979, has declared Mr. Sabeti an enemy of the state and has sought to murder him in exile, like other figures associated with the pre-revolution government. *Id.* at ¶¶ 8, 14, 15, 16, 17, 18, 19, 20, 36. Although the Plaintiffs' claims purport to challenge government activity, Mr. Sabeti's current status as a private individual—combined with the extensive, decades-long gap between the time of his government service and the present and his enemy status from the current regime—implicate the reputational concerns underlying this factor and, thus, weigh strongly ***against*** pseudonymous treatment. *See, e.g.*, *Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) (holding that this factor weighed against anonymity, when the plaintiffs had "sue[d] not

only a governmental entity" but also "school officials in their *individual* capacities" (emphasis in original)); *A.B. v. United States Dep't of Homeland Sec.*, 2023 WL 6160838, at \*2 (S.D. Fla. Sept. 21, 2023) (concluding, as to this factor, that there was no risk of "inflicting reputational or economic harm" because the individual government officials were sued *only* "in their official capacities"); *Nat'l Rifle Ass'n of Am., Inc. v. Bondi*, 2018 WL 11014101, at \*3 (N.D. Fla. May 13, 2018) (same). Here, the Plaintiffs have indisputably sued Mr. Sabeti in his ***individual*** capacity.

Second, the Pseudonym Order erred in providing that the reputational fallout of the Plaintiffs' serious allegations was "further allayed" because of the purportedly "'well-documented nature' of widespread torture claims against this Defendant." Pseudonym Order at 5. As an initial matter, Mr. Sabeti is a private individual, which is dispositive of this factor, rendering unnecessary any consideration of the quality of Mr. Sabeti's reputation. Second, apart from the one-sided allegations in the Plaintiffs' Complaint and Motion, the Pseudonym Order relied upon excerpts from two newspaper articles from the 1970s—one of which references Mr. Sabeti's "***denials***" regarding allegations of torture, and the other which does not even reference the subject of torture at all. *See id.* at 5–6 (emphasis added). These excerpts, of course, cannot form the predicate for factual findings about Mr. Sabeti's purported reputation because they are pure, uncorroborated, third-party hearsay. *See, e.g., Doe v. Texaco,*

20

*Inc.*, 2006 WL 2850035, at \*3 (N.D. Cal. Oct. 5, 2006) (striking newspaper articles attached to the plaintiffs' declarations in support of anonymity, because the articles did not fall under any hearsay exception).

Lastly, the Plaintiffs' suggestion that these historical, uncorroborated allegations against Mr. Sabeti diminish his perceived character and, thus, his reputational interests, likewise are an invitation to legal error. Respectfully, the Plaintiffs' reasoning would provide for courts to apply their own preferences and judgments about the popularity of defendants to determine the purported quality of their reputation and, thus, the reputational impact of the Plaintiffs' allegations. The law does not provide for these judgments. Because Mr. Sabeti is a private individual with a reputation to defend, the Court's findings regarding these uncorroborated allegations are not only legally inapposite, but improper, especially at this early stage of the case when Mr. Sabeti has not had an opportunity to be heard, let alone defend himself.

## C. The Plaintiffs' Claims Do Not Rise to the Level of Severity Ordinarily Required for Pseudonymous Treatment.

*Third*, as for the nature of the Plaintiffs' allegations, the Plaintiffs argued that "the deeply personal and scaring [sic] nature of Plaintiffs' experiences weigh in favor of anonymity." Pseudonym Order at 7. Although Mr. Sabeti acknowledges that these types of allegations, when true in a proper case, could support anonymity, as noted, the Plaintiffs have flatly refused to

21

provide the Defendant with any information that could serve to corroborate their allegations concerning the fear or embarrassment of proceeding under their own names.

In any event, even if the Court were to accept these allegations as true, two countervailing considerations render anonymity inappropriate. First, the extensive passage of time—of approximately 50 years between the underlying events and the present—serves to ameliorate the ramifications of the Plaintiffs' disclosures concerning the sensitive subject matter of this case. Moreover, even if that subject matter is intimate, the allegations of the Complaint are not analogous to the cases cited in the Motion and Order, in which courts concluded that more egregious, sensitive allegations—such as allegations of sexual assault—favored anonymity. *See C.S. v. Choice Hotels, Int'l, Inc.*, 2021 WL 2792166, at *4 (M.D. Fla. June 11, 2021) (cited at page 6 of the Pseudonym Order). Those types of allegations are not at issue here.

Second, according to the Plaintiffs' own declarations in support of their Motion, this lawsuit is an effort to seek "accountability" from Mr. Sabeti for the acts alleged in the Complaint. *See* Child Decl. at ¶ 22; John Doe I Decl. at ¶¶ 34–35; John Doe II. Decl. at ¶ 26; John Doe III Decl. at ¶ 23. Accordingly, because it was the Plaintiffs who initiated this lawsuit to seek legal redress from Mr. Sabeti, it would be fundamentally unfair for the Plaintiffs to avail themselves of the cloak of anonymity, while simultaneously exposing Mr.

22

Sabeti to all of the reputational effects of their serious allegations. *See, e.g.*, *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) ("If plaintiff were permitted to prosecute this case anonymously, [the defendant] would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity.").

*    *    *

For all of the reasons established above, anonymity in this case would prejudice Mr. Sabeti and, for that reason, the Plaintiffs have not satisfied their burden of showing that their purported privacy interests outweigh Mr. Sabeti's right to a public lawsuit. Moreover, if the Court maintains that some form of anonymity is appropriate, it should order less restrictive means than fully-fledged anonymity, such as redactions. *See, e.g.*, *Doe v. Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *3 (S.D.N.Y. July 10, 2019) ("And although Plaintiff's name will become public, '[s]ealing and redacting certain documents containing sensitive information are sufficient alternatives to anonymity and, in fact, routinely done in cases involving sensitive matters.'").

At a minimum, the Court must require the Plaintiffs to immediately disclose their identities to the defense to uphold Mr. Sabeti's due process rights. And the Court should order that Mr. Sabeti will have the right to later revisit the propriety of pseudonymous treatment, especially in view of the fact that the Plaintiffs have refused to identify themselves or to provide their

23

unredacted filings to the defense to date. *See Doe v. Rollins Coll.*, 2018 WL 11275374, at \*4 (M.D. Fla. Oct. 2, 2018); *Doe v. Univ. of St. Thomas*, 2016 WL 9307609, at \*4 (D. Minn. May 25, 2016); *Daedone*, 2024 WL 3897078, at \*5.

Dated:  May 21, 2025

Respectfully submitted,

**MARCUS NEIMAN
RASHBAUM & PINEIRO LLP**

*Jeffrey E. Marcus*
*Bryan A. Almeida*
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com

One Biscayne Tower
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
(305) 400-4260

**LEVY FIRESTONE MUSE LLP**

Joshua A. Levy, Esq.
D.C. Bar No. 475108
jal@levyfirestone.com
Justin A. DiCharia, Esq.
D.C. Bar No. 1671109
jdicharia@levyfirestone.com

900 17th Street N.W., Suite 1200
Washington, D.C. 20006
(202) 845-3215

*Attorneys for Mr. Sabeti*

24

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I electronically filed the foregoing

document via CM/ECF, which will cause a copy of the document to be served,

by email, to all parties and counsel of record.

*Jeffrey E. Marcus*
Jeffrey E. Marcus, Esq.

25