UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

_____

JOHN DOE I, JOHN DOE II, and            )
JOHN DOE III,                           )
                                        )
                    *Plaintiffs*,       )   Case No. 6:25-cv-219-GAP-
                                        )   DCI
v.                                      )
                                        )
PARVIZ SABETI,                          )
                                        )
                    *Defendant*.        )

_____

### DEFENDANT'S MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT

Defendant, Parviz Sabeti ("Defendant" or "Mr. Sabeti"), respectfully requests this Court dismiss with prejudice Plaintiffs' First Amended Complaint ("Complaint") (D.E. 47), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs' Complaint is untimely, extraterritorial, and legally baseless. Their claims—premised entirely on vague and conclusory allegations dating back over fifty years to alleged conduct in Iran—are barred by the statute of limitations and unsupported by any plausible facts. Plaintiffs fail to allege any direct connection to Defendant, relying instead on speculative "information and belief" assertions and implausible inferences. In addition, their equitable tolling theory collapses under the weight of public records

1

showing that Mr. Sabeti's name and Florida residence have been openly available for many decades.

The Complaint's invocation of decades-old political grievances further underscores the improper and politically motivated nature of this action.[1] Plaintiffs misuse this Court to pursue untimely, legally deficient, false, and unsupported claims against Mr. Sabeti —an 89-year-old family man who Plaintiffs wildly claim may be "reinstituted" as a political leader in Iran in the event of a regime change. Not only are the allegations against Defendant untrue and entirely extraterritorial, but these claims are well beyond the applicable statute of limitations, given that Defendant's name and whereabouts in Florida have—for decades—been a matter of public record.

## FACTS

Through conclusory allegations and allegations pled only "on information and belief," the John Doe Plaintiffs ("Plaintiffs") allege that between 1970 and 1975, when they were Iranian citizens living in Iran, they were arrested by Iranian government agents, tortured and tried in Iran, and imprisoned in Iran. Compl. ¶¶ 76–104. Plaintiffs do not allege any activities in the United States related to their claims, nor do they allege any harm aimed

---

[1] Plaintiffs brought forth this action at an extraordinarily late stage—amid escalating conflict among the Iranian opposition groups abroad seeking to succeed the current regime in Iran, including factions loyal to the exiled Crown Prince Reza Pahlavi and rival Marxist-Islamist and other leftist groups—strongly suggesting a politically motivated intent.

at the United States. The Complaint exclusively concerns extraterritorial activities from the early 1970s.

Plaintiffs do not allege any interactions with Defendant. Instead, Plaintiffs draw unreasonable and false inferences from general allegations about Defendant's biography and Iranian history. Plaintiffs allege, for example, that Defendant led the Third Division of *Sazman-e Ettela'at va Amniyat-e Keshvar* ("SAVAK"), Iran's security apparatus under Shah Mohammad-Reza Pahlavi's (the "Shah") pro-Western government, during the period in which their claims accrued. Plaintiffs also allege the patently false statement that Defendant served as Chairperson or "de facto leader" for the "Joint Committee to Fight Terrorism" ("Committee"). *Id.* ¶¶ 26–27, 43. Plaintiffs allege generally that the Committee and SAVAK arrested and tortured Iranians, *e.g.*, *id.* ¶¶ 36, 39, and they allege, "on information and belief" and through conclusory statements, that Defendant was involved in their arrests and interrogations or was involved in SAVAK or Committee interrogation policies generally. *Id.* ¶¶ 31–32, 35, 47, 52–53, 56, 58–61, 63, 65-66, 68, 74, 81, 93, 102, 105–11, 128, 164–65, 169, 171, 173, 176, 178, 182, 188, 192, 194–99, 204, 209, 210, 213. Plaintiffs fail to plead facts that plausibly connect Mr. Sabeti to the conduct they allege he engaged in.

Plaintiffs even make the astounding and offensive claim that Mr. Sabeti has ties to the Islamic Revolutionary Guard Corps (the "IRGC") and that he

3

was involved in procuring arms for the Islamic Republic during Iran Contra. *Id.* ¶¶ 153–58. The IRGC, designated a Foreign Terrorist Organization by the United States, is embedded in virtually every sector of Iranian society—from media and manufacturing to the country's nuclear program. Given the IRGC's sprawling footprint, Plaintiffs attempt to smear Defendant by drawing tenuous links between him and ordinary Iranian individuals—especially those in the diaspora or Iranian media abroad—under the pretext of so-called "IRGC affiliation." Plaintiffs' reliance on this kind of guilt-by-association rhetoric only underscores the political—and baseless—nature of their claims.

Anticipating the affirmative defense that the claims are barred by applicable statutes of limitations, Plaintiffs falsely allege, "on information and belief," that Mr. Sabeti concealed his presence in the United States. *E.g., id.* ¶ 7. Plaintiffs do not, however, allege they conducted *any due diligence* in searching for Defendant over the last several decades. Nor could they. Mr. Sabeti has lived openly under his name since moving to the United States in 1978, and in a matter of hours, Defendant's counsel found dozens of decades-old, publicly available documents that show Mr. Sabeti publicly used his name and declared his presence in Florida. *See* Declaration of J. Marcus (hereinafter "Marcus Decl.").

For the reasons discussed further below, the Court should dismiss the Complaint, with prejudice.

## MEMORANDUM OF LAW

### I.    APPLICABLE STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint—it does not reach the merits of the case." *Carter v. Wyndham Vacation Ownership, Inc.*, No. 6:16-cv-1739-Orl-31TBS, 2016 WL 7243096, at *1 (M.D. Fla. Dec. 15, 2016) (Presnell, J.). In ruling on such a motion, "the Court accepts factual allegations as true and construes the complaint in the light most favorable to the plaintiff." *Id.* The Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a plaintiff may allege facts "on information and belief," those "information and belief assertions" are mere conclusory statements unless they are "buttressed by specific facts and otherwise supported by inferences derived from other well-pled allegations." *Duncan v. Rushmore Loan Mgmt. Servs., LLC*, No. 6:20-CV-1524-CEM-GJK, 2021 WL 8774248, at *5 (M.D. Fla. Sept. 30, 2021) (citation and quotation omitted); *see also In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, No. 08-01916-MD, 2023 WL 9029686, at *7, *19 (S.D. Fla. Sept. 13, 2023).

## II.    PLAINTIFFS' CLAIMS ARE TIME-BARRED

### A. Plaintiffs' Claims Expired in the Mid-1980s.

Plaintiffs' causes of action allegedly accrued between 1970 and 1975, when they allege to have been unlawfully arrested or tortured in Iran. Compl. ¶¶ 72–100. The Torture Victim Protection Act ("TVPA") has a ten-year statutes of limitations, *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1153 (11th Cir. 2005), meaning Plaintiffs' TVPA claims were time-barred by 1985, at the latest.[2] *Xianhua v. Oath Holdings, Inc.*, No. 20-CV-06185-HSG, 2022 WL 976976, at *2 (N.D. Cal. Mar. 31, 2022) ("TVPA claims are federal claims and thus accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action") (citation omitted), *aff'd on other grounds*, No. 22-15700, 2023 WL 2929320 (9th Cir. Apr. 13, 2023). Plaintiffs' state-law claims have two- or four-year limitations periods. § 95.11, Fla. Stat. The Complaint asserts intentional tort claims for assault, battery, intentional infliction of emotional distress, and civil conspiracy, all of which must be commenced within four years of the claims' accrual. *Id.* § 95.11(3)(n); *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 101 (Fla. 3d DCA 2019) (stating that a civil conspiracy claim is subject to a four-year statute of limitations). The Complaint also asserts negligent infliction of emotional distress and negligence, which

---

[2] Although the TVPA was signed in 1992 and it has retroactive effect, this does not change when the ten-year statute of limitations begins to run. *See Cabello*, 402 F.3d at 1153–56.

have two-year limitations periods. § 95.11(5)(a). Thus, the statutes of limitations periods expired in the early-to-mid 1980s for the state-law claims. § 95.031(1), Fla. Stat. ("A cause of action accrues when the last element constituting the cause of action occurs.").

### B. Plaintiffs Do Not, and Cannot, Adequately Plead That Equitable Tolling Applies.

A party is permitted to use a Rule 12(b)(6) motion as a vehicle to challenge a complaint on statute of limitations grounds if "facts on the face of the pleadings show that the statute of limitations bars the action." *Gunnam v. Hicks*, Case No. 6:23-cv-1715, 2024 WL 3634950, at *2 (M.D. Fla. May 31, 2024). When a plaintiff "cho[o]se[s] to anticipate the affirmative defense of equitable tolling in his complaint, he b[ea]r[s] the burden of alleging facts to support that defense. And this burden require[s] him to allege that he was diligent[.]" *Villareal v. R.J. Reynolds Tobacco Company*, 839 F.3d 958, 973 (11th Cir. 2016) (affirming dismissal of claim as untimely because Plaintiff anticipated the affirmative defense of equitable tolling in his complaint but failed to allege facts showing diligence); *see also Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021) (holding that plaintiffs failed to plausibly allege equitable tolling via fraudulent concealment in the complaint because the allegations were conclusory).

7

Plaintiffs anticipate an affirmative defense based on statutes of limitations. Specifically, they allege that Defendant concealed his identity upon moving to the United States. Compl. ¶¶ 7, 24, 112–21; *see also* Ex. 16 to Marcus Decl. (Plaintiffs' counsel's claim that "the statute of limitations have (sic) not expired pursuant to equitable tolling principles well-supported by allegations within the Complaint").[3] But the facts on the face of the Complaint and Plaintiffs' failure to adequately plead equitable tolling permit this Court to dismiss this Complaint on statute of limitations grounds.

"The general test for equitable tolling requires the party seeking tolling to prove '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Villareal*, 839 F.3d at 971;[4] *see also Mesidor v. Waste Mgmt., Inc. of Florida*, 606 F. App'x 934, 936 (11th Cir. 2015) ("Equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence"). One such "extraordinary circumstance" is fraudulent concealment. *See Lech v. State Farm Life Ins. Co.*, No. 8:19-CV-2983-T-35TGW, 2021 WL 1307610, at *3 (M.D. Fla. Feb. 23, 2021). However, allegations of fraudulent concealment or misrepresentations "will not excuse a plaintiff's lack of diligence." *Myers v.*

---

[3] Hereinafter Exhibits to this Decl. referred to as "Ex. [#]."

[4] *Villareal*, 839 F.3d at 971 (stating these equitable tolling requirements applied to the TVPA); *Arce v. Garcia*, 400 F.3d 1340, 1346 (11th Cir. 2005) (noting Congress intended "fraudulent" concealment to be a means in which equitable tolling might apply to the TVPA), *superseded on other grounds*, 434 F.3d 1254 (11th Cir. 2006).

*Provident Life & Accident Ins. Co.*, No. 8:19-CV-724-CEH-CPT, 2023 WL 348859, at \*15 (M.D. Fla. Jan. 20, 2023).

As the following sections show, Plaintiffs have not met their burden here.

### C. Equitable Tolling Is Foreclosed Because Plaintiffs Cannot Show They Pursued Their Claims Diligently.

Mostly "on information and belief," Plaintiffs claim Mr. Sabeti concealed his identity until 2023, Compl. ¶¶ 7, 24, 112–21, but *do not include a single assertion of due diligence*. That is not sufficient to adequately plead equitable tolling, and for this reason alone, the Complaint should be dismissed on its face for failure to timely bring the claims. *See Villareal*, 839 F.3d at 973. "The diligence requirement will defeat tolling for a plaintiff who had notice sufficient to prompt them to investigate, and… had they done so diligently, they would have discovered the basis for their claims[.]" *Myers*, 2023 WL 348859, at \*14 (quotations omitted). "A plaintiff who fails to investigate when a reasonable person would do so cannot receive the benefit of tolling." *Id.* Plaintiffs fail to allege *any* due diligence conducted to find Defendant.

Indeed, Plaintiffs do not allege that they undertook any due diligence to learn that Mr. Sabeti has been a Florida resident for decades. Plaintiffs incorrectly impose the burden on *Defendant* to advertise his whereabouts, claiming they "had no indication of where to look for Defendant Sabeti" because "[w]hen Defendant Sabeti left Iran, he did not publicize his address or

whereabouts" and that "[f]or decades" they "had no reasonable means of determining where in the world (or even in the continental United States) Defendant Sabeti may have been residing." *Id.* ¶ 113. But the burden is on Plaintiffs to show they diligently pursued their rights, and the undisputed facts foreclose them from doing so. A cursory search of the Internet and public records would have revealed Defendant's identity and whereabouts *many decades* before 2023, foreclosing Plaintiffs from alleging they exercised reasonable care and diligence to locate Defendant. In fact, Defendant's whereabouts have been readily available in the public record for *at least* 35 years, if not longer. Ex. 1.

The Court can take judicial notice of the fact that Defendant's identity and whereabouts in Florida have been publicly available *for decades*, as set forth in the attached exhibits and as described below.[5] Defendant is not requesting that the Court take judicial notice of the truth asserted in any of these exhibits, but rather to take judicial notice of the fact that these public records have given the same identity and whereabouts for Defendant for

---

[5] The Eleventh Circuit has previously approved the taking of judicial notice for a 12(b)(6) motion to dismiss of public documents like the ones appended to Defendant's brief. *U.S. ex rel. Osheroff*, 776 F.3d 805, 811 (11th Cir. 2015) (finding it proper for a district court to take judicial notice of "five *Miami Herald* articles, two advertisements in the *Miami Herald*, [and a] transcript of a hearing in another case involving a defendant clinic in state court."); *United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294, 1300 (11th Cir. 2024) (noting that the district court properly took judicial notice of three blog posts at the motion to dismiss stage); *Alli v. Green*, No. 5:20-CV-556-ACC-PRL, 2022 WL 3544317, at *2 (M.D. Fla. Aug. 18, 2022) ("The Court may take judicial notice of facts that are generally known within its jurisdiction or in the public records."); *see also* Fed. R. Evid. 201.

decades, despite Plaintiffs' claims that this information was concealed before 2023.

Alternatively, if the Court finds it cannot take judicial notice of these public records, the Court could convert this Rule 12(b)(6) motion into a motion for summary judgment under Rule 12(d). *Shuler v. Bd. of Trustees of Univ. of Alabama*, 480 F. App'x 540, 543 (11th Cir. 2012) (holding that conversion of a Rule 12(b)(6) motion to dismiss into a motion for summary judgment, and granting summary judgment without allowing discovery, was proper).

Thirty-five years ago, Mr. Sabeti's full name, age, and address appeared in *The Orlando Sentinel* on February 13, 1990, after Defendant was a victim in an auto accident. Ex. 1. The article is available on Westlaw and in digital archives of *The Orlando Sentinel*. Marcus Decl. ¶ 2. From 1995 through 2014, Defendant's name and various related addresses have appeared in fifty-three (53) annual corporate business reports held by the Florida Department of State's Division of Corporations. Exs. 2–4. Each report is available online. Marcus Decl. ¶¶ 3–5. Defendant's name appears seventy-six (76) times and his Florida address appears sixty-six (66) times in Federal Election Commission political donation records between 1999 and 2014. Ex. 13. In 2002, the Lake County Board of County Commissioners mentioned Defendant by his name in

11

meeting minutes regarding a land plan amendment. Ex. 5. The meeting minutes have been available online at least since 2011, if not before then.[6]

Since 2008, Defendant's daughter—a prominent Iranian-American scientist named one of *Time Magazine's* Persons of the Year in 2014 for her pioneering work countering the Ebola Virus—has openly spoken about her father, including his role within the Shah's government, Exs. 6–8, 11, and her interviews have been amplified loudly within the Iranian community for years. In 2012, an opinion column published online in *Frontline PBS*'s Tehran Bureau, which included inflammatory and false allegations, stated that Defendant lived in Florida. Ex. 10. Since 2013, the Wikipedia page for Defendant's daughter has stated that her father, "Parviz Sabeti, was a high ranking official in SAVAK, Iran's intelligence agency," and her family had "settled in Florida" after fleeing Iran. Ex. 12. Defendant's daughter's page is also linked to Defendant's own Wikipedia page, which has, since 2013, stated Mr. Sabeti was a former SAVAK deputy. Ex. 14.

Defendant's counsel discovered much of this information within minutes by running Mr. Sabeti's name in Accurint, a LexisNexis service that searches for and provides individual, property, and business records for legal investigations. *See* Decl. of S. Holland. The Accurint report showed that: in

---

[6] Internet Archive Wayback Machine, https://web.archive.org/web/20110901000000*/https://www.lakecountyclerk.org/forms/board_minutes/2002/03/2002-03-19_Regular_Meeting.htm (last visited Mar. 10, 2025).

1981, Defendant had been given a social security number in Florida; since 1981, Defendant's name has been associated with over twenty-five (25) addresses in Florida; and since at least 1994, Defendant has been listed on Florida's voter rolls. *Id.* ¶¶ 4, 6, 8.

Plaintiffs have failed to allege *any* due diligence, and they would be unable to do so given the information that has been openly available for decades showing Mr. Sabeti's whereabouts in Florida. Thus, Plaintiffs have improperly used their "on information and belief" pleading in a futile attempt to hide their failure to meet the due diligence requirement.

### D. Plaintiffs Fail to Plausibly Allege Fraudulent Concealment.

Plaintiffs do not allege "fraudulent concealment" as required for equitable tolling through "concealment," *see Lech*, 2021 WL 1307610, at 3. To establish fraudulent concealment, Plaintiffs must allege and establish: (1) "successful concealment," (2) "fraudulent means to achieve that concealment," and (3) "plaintiff exercised reasonable care and diligence in seeking to discover the facts." *Id.* at *3 (internal quotation marks omitted). Plaintiffs have not met this burden.

Plaintiffs falsely claim Defendant "concealed" his identity until 2023 when his daughter posted a photo of Defendant in the United States on Twitter and when Defendant "for the first time" appeared in a television documentary allegedly detailing his life. Compl. ¶¶ 116, 119. Yet, Defendant's presence in

13

the United States had long been public by then, *see supra*, and mere allegations that a person chose not to have social media presence and not to participate in nationally televised interviews are not sufficient to plausibly allege "concealment."[7]

Plaintiffs claim that Mr. Sabeti and his wife "used various aliases with respect to their first and last names" and that Mr. Sabeti "even obtained power of attorney from numerous individuals," Compl. ¶¶ 115, but they fail to allege, other than "on information and belief" that this perfectly legal conduct, if true, was designed to conceal their whereabouts. Nor do they even allege that this conduct, accepted as true for purposes of this motion, *in fact* concealed their whereabouts; they merely allege, in a conclusory fashion, that Plaintiffs were "unaware" of Mr. Sabeti's whereabouts because of this alleged concealment. (As shown in Section II(C), the alleged conduct did not, in fact, conceal his whereabouts.)

Even accepting as true Plaintiffs' allegations of use of aliases and power of attorney, those allegations do not meet the required plausibility standard, *see Iqbal*, 556 U.S. at 678, because the Complaint does not plead sufficient factual content to show that Defendant *only* used aliases or power of attorney,

---

[7] It matters not if "[n]umerous media sites noted that this was the first public appearance of Defendant since 1979," Compl. ¶ 118, given that Defendant has been living openly under his own name in the United States, as seen in the public record, for decades. *See supra* Section II(C).

14

as the use of an alias or power of attorney would not preclude Defendant from *also* using his own name. Minimal diligence would show decades of public records of Defendant using *his own name* openly in Florida. But Plaintiffs failed to conduct any due diligence.

Furthermore, "information and belief" assertions fail as mere "conclusory" allegations, unless they are "buttressed by specific facts and otherwise supported by inferences derived from other well-pled allegations." *Duncan*, 2021 WL 8774248, at *5. Plaintiffs have not "buttressed" their heavy reliance on "information and belief" with "specific facts" or "inferences derived from well-pled allegations," and thus no allegations of "concealment" can be plausibly inferred from these mere conclusory allegations.

Plaintiffs cite a YouTube interview where Defendant asked for his face not to be shown, Compl. ¶ 119, but which does not obscure Defendant's name or prevent a diligent search of the public record for his location. Of note, a 2008 US national TV broadcast about Mr. Sabeti's daughter featured seven images of the Defendant, including several from around the time of the broadcast. *See* Ex. 8. Additionally, Plaintiffs quote an "Iranian historian[ ],"Compl. ¶ 114 n.11, but they take the quoted rhetoric out-of-context: Plaintiffs omit the author's description of the "heavy fog of rumor" of Mr. Sabeti's whereabouts as

15

"conspiracy theor[ies]" within "Iran's complicated conspiratorial cosmos."[8] *See* Ex. 15.

Finally, Plaintiffs cite a news interview by Defendant's daughter, out of context, where she allegedly stated Defendant "recently kind of came out of the woodworks," "that her mother had waited 44 years before bringing him to a protest," that she asked Defendant "how it feels to 'come out,'" and that when she was a child her family moved often and "changed their names several times." *Id.* ¶ 120. When taken in context, the interview indicates Defendant's daughter was referring to the "early days" immediately after her family fled to the United States in 1978 and feared for their safety because of threats from the Islamic Republic of Iran.[9] Regardless, Defendant has lived openly under his name since 1978, and his name and whereabouts have been identifiable in the public record for decades. Furthermore, Defendant took no steps to conceal that information in the public record, belying any plausible claim of concealment.

---

[8] ABBAS MILANI, EMINENT PERSIANS: THE MEN AND WOMEN WHO MADE MODERN IRAN 285 (2008). Because the Plaintiffs rely on this book in their Complaint, and the book's authenticity is not disputed, the Court can consider this Exhibit without converting the motion into one for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[9] NUFDI, Dr. Pardis Sabeti | Iran Uncovered #12, YOUTUBE (Nov. 2, 2024), https://www.youtube.com/watch?v=RVZFi_0g_j8 ("we left in 1978 when I was just two years old and on the eve of the Revolution my father sent us out of the country and stayed behind as long as he could before sort of it was untenable to stay. So, we went on to the United States ourselves and we spent a lot of our early days in the country moving from state to state trying to find a place, trying to avoid danger and harm, so even that part of our childhood in America was chaotic.")

**E. Plaintiffs Fail to Plausibly Allege Any Other "Extraordinary Circumstances" That Toll the Statutes of Limitations.**

Plaintiffs claim they cannot bring their claims in Iran, not because of any action or statements the Iranian government has taken or threatened against them, but, in general, "due to the repressive authoritarian regimes that have controlled Iran," which have "actively targeted individuals who oppose them" and have caused them to fear for their safety. Compl. ¶¶ 123–31. These allegations do not plausibly state "extraordinary circumstances" that could equitably toll the statutes of limitations. Courts have found such circumstances only when the existence of a repressive government would prevent a plaintiff's investigation of claims and compilation of evidence without fear of reprisals against him, his family, and witnesses who live in the country. *Jean v. Dorelian*, 431 F.3d 776, 779–80 (11th Cir. 2005).

Plaintiffs do not allege that the repressive government of the Islamic Republic of Iran prevented them from bringing these claims in the United States. Nor could they plausibly allege this given that many suits have been brought against Iran in the United States. *See, e.g.*, *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 61 (D.D.C. 2007).

**F. The Complaint's State Law Claims Cannot Be Tolled.**

Florida's tolling statute "sets forth the limited circumstances under which the statute of limitations may be tolled" and "explicitly precludes

17

application of any tolling provision not specified by the legislature." *In re Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1315 (S.D. Fla. 2010), *on reconsideration on other grounds*, No. 08-01916-MD, 2015 WL 71562 (S.D. Fla. Jan. 6, 2015). The statute, in relevant part, allows tolling for a defendant's use of a false name or concealment in Florida to avoid service of process. § 95.051(1)(b)-(c).

Considering the extensive references in the public record to Defendant's name and whereabouts in Florida since at least 1990, *see* Exs. 1–14, Defendant did not "use" a "false name or concealment in Florida to avoid service of process," and Plaintiffs fail to plausibly allege tolling under Florida law. Plaintiffs' vague allegations that Defendant used "aliases" and "concealed his whereabouts," Compl. ¶¶ 112, 115, 119, are conclusory and do not provide what alleged aliases were used or when they were used.

## III.   PLAINTIFFS FAIL TO STATE CLAIMS UNDER STATE LAW.

Plaintiffs allege state law claims for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and civil conspiracy. Compl. ¶¶ 168–213. Plaintiffs premised these claims on acts by Iranians against Iranians inside Iran. There are no allegations that "this conduct had or was intended to have a substantial effect within the state[ ] of Florida . . . . Nor are the state-law claims alleged here— e.g., ordinary tort claims for assault and battery, negligence . . . etc.—matters

18

of universal concern recognized by the community of nations." *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1355 (S.D. Fla. 2011), *reversed on other grounds*, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014); *see also Est. of Faull v. McAfee*, No. 613CV1746ORL31KRS, 2015 WL 6125309, at *3 (M.D. Fla. Oct. 16, 2015) (Presnell, J.). Plaintiffs do not live in Florida. Nor do they allege "effects" of the alleged torts felt in Florida. *Basulto v. Cuba,* No. 02–21500, ECF No. 39, Final Order Finding the Republic of Cuba Liable to Plaintiff at 15 (S.D. Fla. Jan. 20, 2005) (permitting a Florida citizen to assert a claim under Florida tort law where the alleged conduct had a "detrimental effect on its citizens after their return to the State.").

"Florida courts have consistently declined to apply Florida law outside [of Florida's] territorial boundaries unless a statute contains an express intention that its provisions are to be given extraterritorial effect." *U.S. v. Berdeal*, 595 F. Supp. 2d 1326, 1330 (S.D. Fla. 2009) (internal quotation marks omitted). The Complaint, however, contains no such statutory claims: Plaintiffs only allege common law torts. Compl. ¶¶ 168–213. These torts have not been codified by the Florida State Legislature, nor is there jurisprudence indicating these torts apply extraterritorially. Given Florida's strong presumption against extraterritorial application of its laws, and because all the alleged conduct related to the claims occurred in Iran, Plaintiffs have failed

19

to state claims under Florida law.[10] Accordingly, Counts II through VII must be dismissed on these grounds.

## IV. PLAINTIFFS FAIL TO ALLEGE SECONDARY LIABILITY

Plaintiffs rely on secondary (or indirect) liability for their claims,[11] which are based on conclusory allegations or unsupported allegations "on information and belief," failing to state plausible claims for relief. *Iqbal*, 556 U.S. at 678; *Duncan*, 2021 WL 8774248, at \*5.[12]

**Aiding and Abetting Liability.** Under aiding and abetting liability, Plaintiffs must plausibly allege that Defendant provided "knowing substantial assistance" to the alleged tortfeasors. *In re Chiquita Brands Int'l, Inc.*, 190 F. Supp. 3d 1100, 1117 (S.D. Fla. 2016); *see also Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1237 (S.D. Fla. 2012) ("The purpose or intent necessary under both aiding and abetting and conspiracy requires more than mere knowledge of the principal's unlawful goals.") (internal quotation marks omitted)). In conclusory fashion, Plaintiffs allege Defendant is liable for their injuries because

---

[10] Additionally, California law, which Plaintiffs do not allege in this Complaint, but Defendant addresses here for good measure, has a presumption against extraterritoriality that, like in Florida, is only overcome by clear legislative expression. *Doe v. Fitzgerald*, No. CV2010713MWFRAOX, 2022 WL 2784805, at \*11 (C.D. Cal. May 13, 2022) ("There is a presumption against extraterritorial application of California laws outside of California, let alone beyond the borders of the United States. And this presumption will prevail unless the Legislature clearly expresses an intention for a law to extend beyond California's borders.").

[11] *See Cabello*, 402 F.3d at 1157–58 (11th Cir. 2005) (applying federal common law secondary liability standards to the TVPA).

[12] Secondary liability is not recognized for Plaintiffs' state law claims founded on negligence. *BankUnited, N.A. v. Milliman, Inc.*, Case No. 8:15–cv–1357, 2016 WL 8999079, at \*5 (M.D. Fla. Jan. 15, 2016) (finding "courts have found the concept of secondary liability for negligence to be inherently contradictory").

Defendant "provided knowing, substantial assistance to the direct perpetrators[.]" Compl. ¶ 165.

To support this conclusion, Plaintiffs make only "information and belief" or vague assertions. Compl. ¶¶ 47, 61, 65–66, 74, 105–11. Plaintiffs vaguely allege that Defendant's "personal knowledge of and involvement in the inhumane and illegal treatment of detainees has repeatedly come to light," without providing such illuminations, and Plaintiffs claim that Defendant's "own public statements and those of others in the regime," which they do not provide, show he had knowledge of and advocated for torture. *Id.* ¶¶ 67–68, 111. Plaintiffs also attribute to an un-subtitled Farsi-language documentary that Defendant is "introduced as the man in charge of interrogations," but do not provide a certified translation of the documentary, specific citation to it, or a direct quote. *Id.* ¶ 52. The documentary does not allege torture or abuse.

Plaintiffs cite an academic article that alleges an Iranian actor claimed Defendant threatened to "arrange for his murder"; they cite alleged, unauthenticated Iranian court testimony containing inflammatory and unsupported allegations without providing any citations to or quotes from this testimony; they allege Defendant visited a prisoner to discuss a television interview; they allege that Defendant said "hell with the human rights group" without providing further context; they cite "then-top secret cables" that have nothing to do with arrests and interrogations; and they claim Defendant has

21

stated "dissidents should have been dealt with seriously and severely." *Id.* ¶¶ 62, 69–71, 73.

Plaintiffs allege the Shah's wife asked Defendant to "help select artists, writers, playwrights, and poets arrested or harassed by the regime's security forces as Defendant had control over the arrest and freedom of political prisoners." Compl. ¶ 57. The source cited in the Complaint says nothing, however, of Defendant's actual authority over prisoners, and the full quote prevents any reasonable inference that Defendant harmed Plaintiffs or had control over their alleged tortfeasors.[13] Ex. 17.

These allegations do not buttress Plaintiffs' "information and belief" to show that Defendant had more than "mere knowledge" of the alleged disturbing acts of torture described in the Complaint or that Defendant "substantially" assisted the alleged wrongful acts against Plaintiffs.

**Conspiracy.** Plaintiffs do not assert any non-conclusory allegations of an agreement between Defendant and the individuals allegedly responsible for Plaintiffs' harm, *see id.* ¶¶ 31, 105–06, 108, 165, 209, 210, 213, "and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557.

---

[13] Because Plaintiffs rely on this book in their Complaint, and the book's authenticity is not disputed, the Court can consider this Exhibit on this motion to dismiss. *See Horsley*, 304 F.3d at 1134.

22

**Command Responsibility and Agency.** To establish liability under the command responsibility doctrine, Plaintiffs must plausibly allege a superior-subordinate relationship between the commander and perpetrator of the tort where the superior had "effective control" over the perpetrators. *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 609 (11th Cir. 2015). Plaintiffs fail to do so. Instead, they only make conclusory allegations that Defendant controlled the Iranian security forces who injured Plaintiffs. *E.g.*, Compl. ¶ 107.

Plaintiffs do not assert that their alleged tortfeasors were SAVAK employees within the Third Division, the only division Plaintiffs allege Defendant led. Compl. ¶ 26. Rather, Plaintiffs only allege these individuals were SAVAK personnel or employees of the Committee,[14] *id.* ¶¶ 20–22, 58, 78, 81, 92–93, 99, 102, 105–06, 182, 209. Plaintiffs do not allege, in a non-conclusory way, that Defendant had effective control over any other SAVAK divisions, let alone all of SAVAK. Nor do Plaintiffs sufficiently allege that Defendant had effective control over all Committee personnel. Although Plaintiffs allege Defendant was the "de facto" leader or chairperson of the Committee, *id.* ¶¶ 43, 51,[15] Plaintiffs do not sufficiently allege that his

---

[14] Plaintiffs cannot escape this deficiency with their broad claim that "[r]eferences to SAVAK's actions concerning political dissidents *generally* refer to the actions of SAVAK's Third Division, the most notorious division of SAVAK, which Defendant Sabeti controlled during his tenure as its head." Compl. ¶ 29.

[15] Plaintiffs allege Defendant was the chairperson of the Committee but also allege that there was a "nominal head from the ranks of the military." Compl. ¶ 43.

authority on the Committee was equal to that of the *jure* authorities responsible for the personnel whose agencies participated in the multiagency committee. *See Drummond Co., Inc.*, 782 F.3d at 610 ("A *de facto* superior is an official who exercises powers of control over subordinates that are substantially similar to those exercised by *de jure* authorities.").

Plaintiffs allege that the Committee was a multiagency task force that included SAVAK, the military, the local police, and the gendarmerie, Compl. ¶ 38, and that because Defendant was the head of this multiagency committee, he had "power of control over its members substantially similar or greater to those exercised by the heads of the agencies which comprised the Committee," Compl. ¶ 51. Plaintiffs have provided no allegations to support their claim of "control" over subordinates of other agencies for which Defendant was not a member. Thus, they only offer the conclusion that because Defendant was allegedly the chairperson of a multiagency committee, that position granted him power of control over the four agencies working within the committee and their tens of thousands of employees. *See In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d at 1352–53 (finding conclusory allegations of "control" insufficient to survive motion to dismiss).

Plaintiffs' other allegations—that Defendant "was effectively in charge of interrogations" because of his role at SAVAK and the Committee; that, on information and belief, Defendant "established the policies and practices

24

concerning arresting, detaining, and interrogating perceived dissidents in Iran"; that, on information and belief, "Defendant instructed SAVAK and Committee members on the methods to be used and goals to be achieved in interrogating individuals"; that "Defendant also directed the actions of SAVAK agents, within both the Third Division and the Committee, responsible for the interrogation of dissidents within Iran"—fail to establish effective control because they are either conclusory, *see Duncan*, 2021 WL 8774248, at *5, or because they do not logically follow. Even if true, which it is not, being "the architect of the interrogation practices used by the Shah's regime," does not mean that a person "had control over the torturers who conducted these interrogations." Compl. ¶ 61.

For the same reasons that Plaintiffs fail to sufficiently allege Defendant had "effective control" over the tortfeasors or even that he was the commander in charge of these tortfeasors, Plaintiffs fail to plausibly allege with non-conclusory allegations that the tortfeasors were Defendant's agents.

## CONCLUSION

Defendant respectfully requests that the Court dismiss the Complaint with prejudice because it is time-barred and Plaintiffs fail to state claims under the TVPA or state law.

Dated: June 2, 2025                    Respectfully submitted,

**MARCUS NEIMAN**

25

**RASHBAUM & PINEIRO LLP**

*/s/ Jeffrey E. Marcus*
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com

One Biscayne Tower
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
(305) 400-4260

**LEVY FIRESTONE MUSE LLP**

Joshua A. Levy, Esq.
jal@levyfirestone.com
DC Bar No. 475108
Justin A. DiCharia, Esq.
jdicharia@levyfirestone.com
DC Bar No. 1671109

900 17th Street N.W., Suite 605
Washington, D.C. 20006
(202) 845-3215

*Attorneys for the Defendant*

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that movant has conferred with Plaintiffs on May 30-31, and June 2, 2025, by email. Plaintiffs opposed this motion.

*/s/ Jeffrey E. Marcus*
Jeffrey E. Marcus

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June 2025; the foregoing was served on all counsel of record via CM/ECF.

*/s/ Jeffrey E. Marcus*
Jeffrey E. Marcus