**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOHN DOE I, JOHN DOE II,  and
JOHN DOE III,

                 Plaintiffs,

       v.

PARVIZ SABETI,

                 Defendant.

CASE NO.: 6:25-cv-219-GAP-DCI

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

Plaintiffs John Doe I, John Doe II, and John Doe III (collectively "Plaintiffs") hereby oppose Defendant's Motion to Dismiss the First Amended Complaint (the "Motion") (Doc. 59).

**MEMORANDUM OF LAW**

## I.    Introduction

Plaintiffs filed this lawsuit against Defendant because he is responsible for Plaintiffs' torture. Defendant was the architect of institutionalized torture under the Iranian Regime of Shah Mohammad Reza Pahlavi (a monarchy), as the head of the Third Division of the *Sāzmān-e Ettelā'āt va Amniyat-e Keshvar* ("SAVAK") and as the Chairman of the Joint Committee to Fight Terrorism aka the Joint Anti-Sabotage Committee (the "Committee") which jointly operated to persecute

perceived political opponents of the Shah, including Plaintiffs. The members of the security forces who detained and tortured Plaintiffs were acting as Defendant's agents under Defendant's policies, orders, and instruction. Plaintiffs' First Amended Complaint (the "FAC") sufficiently alleges Defendant's liability and the extraordinary circumstances that warrant tolling of both their federal and state claims. Throughout Defendant's Motion, Defendant improperly asks this Court to dismiss Plaintiffs' claims on the basis of *factual disputes*. These issues are irrelevant at this stage. *See, e.g., Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1335 (S.D. Fla. 2012) (finding that because plaintiff "plead that the doctrine of equitable tolling applies to his case, and determining the applicability of this doctrine necessarily implicates factual issues which cannot be resolved on a motion to dismiss, the Court declines to find that" plaintiff's claims were time barred). The Court should deny Defendant's Motion in its entirety.

## II.   Background[1]

**SAVAK and the Committee.** It is undeniable that the Shah's regime detained and tortured civilians, denied civilians due process and proper trials, and forced those civilians to serve sentences in prison for their perceived political

---

[1] Plaintiffs' allegations, recounted in part below, are not conclusory but are supported by numerous factual allegations as well as numerous sources. Their allegations made on information and belief are properly supported by these factual allegations. Moreover, the information alleged is within Defendant's knowledge. *See Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) ("Pleading on information in belief is still permissible where, as here, the facts are 'peculiarly within the possession and control of the defendant.' [Citation]"); *Pimentel v. Strength2o, LLC*, No. 2:23-CV-544-JLB-KCD, 2024 WL 3952429, at *5 (M.D. Fla. Aug. 27, 2024).

associations. The Committee was directed by the Third Division of the SAVAK and included SAVAK within its structure as a multiagency task force; these organizations operated jointly to address anti-state subversion, i.e., persecuting perceived political opponents of the Shah (including Plaintiffs). (*See* Doc. 47 FAC ¶¶35–39, 43, 44, 47, 51–52.) Defendant was in charge of both the Committee and the Third Division of SAVAK from 1972 to 1978 and Plaintiffs suffered torture at the hands of these organizations, in facilities these organizations ran, precisely during those years. (*See* ¶¶42, 43, 50–52, 77, 87, 90, 99, 116.)

In his roles heading the Committee and SAVAK's Third Division, Defendant was in charge of interrogations. (*See* ¶52.)[2] Defendant had such influence and control over the arrests and treatment of detainees that even the Shah's wife would petition Defendant to help specific individuals targeted by SAVAK and the Committee. (¶57; *see also* ¶¶50, 54–55, 73.) Other individuals reported that Defendant personally threatened them (¶60), participated in their torture (¶70), and discussed the provision of a coerced interview with them (¶71). Defendant also vehemently opposed intervention by human rights groups in Iran. (¶¶72–73.)

**Extraordinary Impediments.** Plaintiffs are elderly Iranian immigrants living in California (¶¶20–22) who have been denied the ability to pursue their claims thus far (*see* ¶¶123–136). The Islamic Republic is an authoritarian regime

---

[2] While Defendant complains that the source cited to in support of this allegation in the FAC is not translated (*see* Doc. 59 at 21), the statement that Defendant was in charge of interrogations is in English. More importantly, this is an evidentiary issue not a pleading issue.

-3-

which incorporated substantial elements of the Shah's regime, continues to target the same elements of society (*see* ¶¶123–130, 133–135), and has targeted human rights activists abroad (¶¶133–135). Plaintiffs have consistently feared violent reprisal—from both the Islamic Republic and from Monarchists (those who seek to restore the monarchy)—for seeking accountability. (*See* ¶¶123–151, 158, 159.) Vindicating their fear, Plaintiffs and their counsel have received death threats originating both in Iran and the U.S. since filing this lawsuit. (*See* ¶¶146–151.)

Plaintiffs chose to bring this case now, and only under pseudonym, facing the very real dangers of doing so, because of the urgency of holding Defendant accountable while all parties are still alive and before Iran undergoes another regime change as the result of collaboration between security forces within the Islamic Republic and supporters of the Monarchy that even further reduces Plaintiffs' ability to safely pursue justice against Defendant. (*See* ¶159.) Plaintiffs were too fearful to seek out Defendant and had no indication of where to look for him as his whereabouts were the subject of rumor; his public reappearance in 2023 was of great shock to the Iranian community. (¶¶112–118.) Defendant and his family also used aliases during their time in the United States. (¶¶115, 120.)

## III.   **Legal Standard**

When evaluating a Rule 12(b)(6) motion, the Court accepts a complaint's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a

-4-

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). The Eleventh Circuit, addressing *Twombly*, stated that "[t]his rule does not 'impose a probability requirement at the pleading stage.'" *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citations omitted).

In deciding motions to dismiss under Rule 12(b)(6), courts are generally limited to the four corners of the complaint. *U.S. ex rel. Kozhukh v. Constellation Tech. Corp.*, 64 F. Supp. 2d 1239, 1242 (M.D. Fla. 1999). Accordingly, the Court should not consider the exhibits Defendant submitted.[3] Plaintiffs' FAC contains sufficient factual allegations to state plausible claims such that Defendant's Motion should be dismissed. Defendant's request that the Motion be converted to one for summary judgment is neither required nor supported by the law, particularly

---

[3] Plaintiffs object to Defendant's effective request for judicial notice of the exhibits attached to the declaration of Jeffrey Marcus as impermissibly requesting the Court to accept as true the statements contained therein. Defendant's argument is only credible insofar as the documents *truthfully* reflect information about Defendant. Furthermore, despite the existence of these documents, Plaintiffs have adequately pleaded their claims, see section IV.A-C below.

without notice and an opportunity for discovery.[4]

## IV.   <u>Argument</u>

### A.   **Plaintiffs' TVPA Claims Have Not Expired**

As an initial matter, Plaintiffs have alleged that equitable tolling applies and there are no grounds for the Court to rule otherwise on a motion to dismiss. *See, e.g., Lech v. State Farm Life Ins. Co.,* No. 8:19-CV-2983-T-35TGW, 2021 WL 1307610, at *3 (M.D. Fla. Feb. 23, 2021) ("A motion to dismiss based on the tolling of a statute of limitations can be granted only if it appears beyond a doubt that [p]laintiffs can prove no set of facts that toll the statute." (citation omitted)); *Spadaro*, 855 F. Supp. 2d at 1335 (finding that because plaintiff "plead that the doctrine of equitable tolling applies to his case, and determining the applicability of this doctrine necessarily implicates factual issues which cannot be resolved on a motion to dismiss, the Court declines to find that" plaintiff's claims were time barred); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.,* 190 F. Supp. 3d 1100, 1116 (S.D. Fla. 2016) (TVPA claims could not be dismissed "[b]ecause the complaints allege facts which might justify an equitable tolling"); *Cabello v. Fernandez-Larios,* 402 F.3d 1148, 1154 (11th Cir. 2005)

---

[4] Contrary to Defendant's claim (see Doc. 59 at 11), "the court **is required to give 'notice to the parties and an opportunity for mutual discovery'**" when converting a motion to dismiss into a motion for summary judgment. *Evans v. Rhodes*, 735 F.App'x 986, 988 (11th Cir. 2018) (quoting *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014)) (emphasis added). Defendant cites *Shuler*, an earlier, distinguishable case where the court found that "[n]o amount of discovery would change the conclusion that the defendants are entitled to summary judgment on all claims." *Shuler v. Bd. of Trs. of Univ. of Alabama*, 480 F. App'x 540, 543 (11th Cir. 2012). Here, there are factual disputes concerning fear and diligence with respect to tolling.

(equitable tolling under the TVPA is a "fact-specific determination").

The TVPA's legislative history makes clear that "***all*** equitable tolling principles" must be considered "in calculating [the tolling] period ***with a view toward giving justice to plaintiff's rights***." *Arce v. Garcia*, 434 F.3d 1254, 1262–63 (11th Cir. 2006) ((emphasis added) citing S. Rep. No. 102-249 at 10–11 (1991)). The Eleventh Circuit has looked to the TVPA's legislative history to guide its analysis of tolling under the TVPA, considered its explicitly "[i]llustrative, *but not exhaustive*, [list] of the types of tolling principles which may be applicable" in TVPA cases, and recognized additional situations under which "justice may also require tolling." *Arce*, 434 F.3d at 1262 (quoting S. Rep. No. 102-249 at 10–11 (1991)) (emphasis in the original). TVPA case law recognizes that multiple overlapping extraordinary circumstances can toll the statute of limitations. Plaintiffs have pled sufficient facts which, accepted as true and taken in the light most favorable to Plaintiffs, further taken with a view towards giving justice to Plaintiffs, support a plausible claim for equitable tolling, precluding dismissal of Plaintiffs' FAC on that basis.

### 1. Extraordinary Circumstances

Plaintiffs have pled sufficient facts which, accepted as true and taken in the light most favorable, support a plausible finding of extraordinary circumstances which toll the statute of limitations on their TVPA claims. The Eleventh Circuit has expressly noted that its "TVPA cases suggest that **equitable tolling applies**

**until the plaintiff 'can investigate and compile evidence without fear of reprisals.'"** *Camps v. Bravo,* No. 23-12511, 2025 WL 1733074, at *7 (11th Cir. June 23, 2025) (citation omitted) (emphasis added) (*Bravo II*). And "that every court that has considered the question of whether a civil war and a repressive authoritarian regime constitute 'extraordinary circumstances' which toll the statutes of limitations of the ATCA and TVPA has answered in the affirmative." *Jean v. Dorelien*, 431 F.3d 776, 780–81 (11th Cir. 2005) (collecting cases, finding "pattern and practice of torture, mass murder, intimidation and reprisals against perceived opponents of the government" sufficient to toll the statute of limitations "until the repressive security forces were dismantled and the democratically elected government resumed power"); *see also Doe v. Saravia*, 348 F. Supp. 2d 1112, 1146–48 (E.D. Cal. 2004) (tolling limitations period during and after El Salvadoran civil war due to fear of retaliation from military, government, and death squads if plaintiffs brought litigation in United States); *Arce*, 434 F.3d at 1265 (upholding tolling where "plaintiffs legitimately feared reprisals from the Salvadoran military") *Warfaa v. Ali*, 1 F.4th 289, 295-96 (4th Cir. 2021) (noting importance of expert opinion that opined about "specific problems in bringing a claim involving human-rights abuses perpetrated by former officials of the dictatorship" that created "unfavorable conditions," even though the dictatorship "was no longer in power").

Plaintiffs have alleged that they were afraid of violent reprisal – from both

-8-

the Islamic Republic and from Monarchists – were they to seek accountability and that this fear has continued. (*See* ¶¶123–151, 158, 159.) From the time of Plaintiffs' torture through today, Iran has been governed by repressive authoritarian regimes that have actively targeted dissidents and individuals who attempt to shed light on human rights violations, such as Plaintiffs. (Doc. 47 FAC ¶¶123–136.) When the Shah's regime fell, the Islamic Republic incorporated many former elements of its security apparatus including retaining staff members and senior leaders, and maintaining and furthering its policies of assassinations, detainment, torture, and brutal suppression of dissent aimed at the same elements of society. (¶¶123–130.) The Islamic Republic's human rights record and involvement in the assassination of dissidents abroad is well-documented. (*See* ¶¶133–135.) Plaintiffs feared that they would face violence from the Islamic Republic, despite being abroad, if they chose to pursue their claims in the United States. Defendant's murky connections to the Islamic Republic (*see* ¶¶138-142, 153-158) and the potential collaboration between elements of the Monarchist movement and the IRGC (*see* ¶142) only contributed to Plaintiffs' fears of violent repercussion if they pursued their claims. Moreover, any factual arguments as to the reasonableness of Plaintiffs' fears regarding Defendant's or Monarchist's associations with the IGRC should be addressed on a motion for summary judgment.

Plaintiffs have alleged that their fear was demonstrably reasonable as they and their counsel have received death threats from individuals inside Iran and the

United States since filing the initial complaint. (*See, e.g.,* ¶¶146–151 ["we'll go after those three terrorists... And what SAVAK didn't do to them (out of compassion, honor, and patriotism), we will do ourselves. We'll take revenge"; "I'll shot in your mouth mother fucker bitch"].) Despite their fears, Plaintiffs chose to bring this case, and only under pseudonym, because of the urgency of holding Defendant accountable before the opportunity to do so—either due to any party's advanced age or due to another regime change in Iran as the result of collaboration between security forces within the Islamic Republic and supporters of the Monarchy — totally forecloses Plaintiffs' ability to pursue justice. (*See* ¶159.) Accepting these allegations as true, Plaintiffs have sufficiently pled extraordinary circumstances.

### 2. Concealment

Plaintiffs have pled sufficient factual allegations to support a plausible finding that Defendant was living in hiding and concealing his whereabouts, which also justifies the equitable tolling of Plaintiffs' TVPA claims. Courts have found that a plaintiff's lack of information as to a defendant's whereabouts supports a finding of concealment and equitable tolling. *See Jane W. v. Thomas*, 560 F.Supp.3d 855, 875 (E.D. Penn. Sept. 15, 2021) (Defendant's presence in the U.S. alone was insufficient to trigger statute of limitations in light of other circumstances which warranted tolling, including that "Plaintiffs had no knowledge he [Defendant] had moved to the U.S."); *see also Camps v. Bravo*, No. 1:20-CV-24294, 2023 WL 11959805 at *11 (S.D. Fla. June 30, 2023) (*Bravo I*) (that defendant "bought and

sold property and opened businesses in Florida under his own name" did not make his name or location public such that tolling ceased prior to March 2008 under the circumstances alleged) (reversed and remanded for additional factual findings on equitable tolling after March 2008 by *Bravo II*).

Plaintiffs have alleged that (beyond fearing reprisals) they had no indication of where to look for Defendant Sabeti, that his whereabouts were the subject of rumor, and that his public reappearance in 2023 was of great shock to the Iranian community[5] among whom Defendant is well-known. (Doc. 47 FAC ¶¶113, 115, 116–118). Plaintiffs have further alleged that Defendant and his family used aliases and that in 2024 his daughter publicly addressed their life in hiding, including multiple name changes. (¶¶115, 120.)[6] Accepting Plaintiffs' allegations as true and taking them in the light most favorable to Plaintiffs, concealment is sufficiently pled.

### 3. Diligence

Plaintiffs allege that they reasonably feared (and continue to fear) death or violence in bringing this lawsuit. There is no requirement that plaintiffs actively facing such extraordinary circumstances must be diligent in pursuing a defendant for a lawsuit they reasonably fear bringing. Defendant apparently argues that

---

[5] Defendant's assertion that this is irrelevant is made without citation to any law. (*See* Doc. 59 at 14, n. 7.) Similar to the Plaintiffs in *Bravo* where the Argentinian government was unaware of Defendant's location, here the broader Iranian diaspora, among whom Sabeti is a notable historical figure, was unaware of Defendant's location. *Bravo I*, 2023 WL 11959805 at *11.

[6] While Plaintiffs maintain that the Court should not consider the records Defendant submitted for the reasons explained above in footnote 2, *supra*, to the extent the Court does consider those records, Plaintiffs note that **one of Defendant's aliases is used therein**. (Doc. 59-6 at 24, "PARVIS **MARK** SABETI".)

despite their reasonable fear of actually bringing a lawsuit, Plaintiffs should have scoured various Florida-specific sources[7] for records of his address. Not only is this illogical, it is not the law on equitable tolling.

Eleventh Circuit law indicates that diligence in bringing TVPA claims is not required for equitable tolling until *after* the extraordinary circumstances which delayed plaintiffs from pursuing their claims have passed. For TVPA claims, the focus of the Eleventh Circuit's inquiry on a plaintiff's diligence is minimal at the motion to dismiss stage; a successful equitable tolling argument may rely entirely on the finding of "extraordinary circumstances" based on repressive regimes or fear of reprisal. *See Cabello*, 402 F.3d at 1155–56[8]; *Arce*, 434 F.3d at 1265 (finding, without discussion of diligence, that plaintiff could only have brought his claims without fear of reprisal after the military regime in El Salvador had fallen). Other districts have similarly applied TVPA tolling principals. *See, e.g., Saravia*, 348 F. Supp. 2d at 1146–48 (finding, without discussion of diligence, equitable tolling

---

[7] The Court should not consider these records for the reasons explained above in footnote 2, *supra*. To the extent the Court does consider these records, Plaintiffs note they include a regional newspaper article published before the world wide web was available to the public, annual corporate business reports, political donation records, and meeting minutes for a local county Board of Commissioners. (Doc. 59 at 11-12.) Regardless of Plaintiffs' fear, because Plaintiffs had no reason to believe Defendant was in the U.S., let alone Florida specifically (*see* Doc. 47 FAC ¶113), their discovery of such resources would have required more than reasonable diligence.

[8] Defendant cites to *Villareal* in support of his arguments pertaining to diligence, however, the case merely notes that the Court in *Cabello* considered diligence in connection with equitable tolling for TVPA claims. *See Villareal v. R.J. Reynolds Tobacco Company*, 839 F.3d 958, 971 (11th Cir. 2016); *see also Cabello*, 402 F.3d at 1155–56 ("...the plaintiff should act with due diligence and file his or her action in a timely fashion in order for equitable tolling to apply. [Citation] The information regarding the circumstances and manner of Cabello's death was not discoverable or knowable until 1990; therefore, the 1999 filing of this claim was timely").

-12-

through to filing of complaint due to risk and fear of violent reprisal). That Plaintiffs would be required to diligently pursue claims they were too fearful to bring (and rightfully so given the threats received since their filing, *see, supra,* section IV.A.1) is inconsistent with the legislative intent of equitable tolling under the TVPA and the Eleventh Circuit's application thereof.

Nevertheless, Plaintiffs acted with reasonable diligence in filing their Complaint. The Eleventh Circuit has routinely recognized that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Dotson v. United States*, 30 F.4th 1259, 1269 (11th Cir. 2022) (citations omitted); *see also Bravo*, No. 1:20-CV-24294, 2023 WL 11959805 at *13 (citing to *Cabello*, 402 F.3d at 1156) ("As the Eleventh Circuit has noted, the level of diligence required is 'due diligence.'"). Considering this standard, Defendant's arguments as to Plaintiffs' lack of diligence are unconvincing.[9] Plaintiffs are elderly Iranian immigrants living in California who were unaware of Defendant's whereabouts, and deeply fearful of pursuing a lawsuit against him. (*See, generally,* Doc. 47 FAC ¶¶123–159.) Despite the real and serious fears faced by Plaintiffs concerning the threat of retaliation faced from both Monarchists and the Islamic Republic, *see, supra,* section IV.A.1, they chose to bring this case because of the

---

[9] Defendant cites *Myers v. Provident Life & Accident Ins. Co.*, No. 8:19-CV-724-CEH-CPT, 2023 WL 348859, (M.D. Fla. Jan. 20, 2023) in support of their diligence arguments, however, this case is readily distinguishable. *Myers* is a RICO case brought against an insurance provider. This standard is inapplicable in the context of TVPA claims.

urgency of pursuing justice while all parties are still alive and the opportunity for justice is not foreclosed, and only did so via pseudonym. (*See* ¶159.)

Plaintiffs' allegations (and Defendant's documentary evidence) present a factual dispute as to the reasonableness of their diligence, which should not be resolved on a motion to dismiss. *See In re Chiquita Brands Int'l, Inc.,* 284 F. Supp. 3d 1284, 1322 (S.D. Fla. 2018) (finding reasonable jurors could differ as to the reasonableness of Plaintiffs' selected course of investigation and their 'due diligence' in pursuit of their rights"); *see also Jara v. Barrientos Nunez,* No. 613CV1426ORL37GJK, 2015 WL 12852354 (M.D. Fla. Apr. 14, 2015), *aff'd in part sub nom. Jara v. Nunez,* 878 F.3d 1268 (11th Cir. 2018) (holding that "allegations of reasonable diligence are sufficient to withstand an assault on the 12(b)(6) front," and noting further discovery may bear on "the issue of the Plaintiffs diligence"). Accepting Plaintiffs' allegations as true and taking them in the light most favorable to Plaintiffs, Plaintiffs have plausibly alleged sufficient diligence given their well-pled and reasonable fears of reprisal.

### B.    Plaintiffs' State Common Law Claims

Whether Iranian law or Florida law is to be applied to Plaintiffs' common law claims has not yet been determined by this Court and need not be determined at this time. Defendant Sabeti has not presented any argument or evidence concerning the laws or statute of limitations in Iran. *See* Fla. Stat. § 95.10 ("When the cause of action arose in another state or territory of the United States, or in a

foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state"). Importantly, Iran has no statute of limitations for civil causes of action. In determining which law to apply, Florida courts weigh the outcomes of the significant relationships test (*see Bates v. Cook, Inc.,* 509 So.2d 1112, 1114-15 (Fla. 1987)) alongside the regularly applicable choice of law principles (*see Mezroub v. Capella,* 702 So. 2d 562, 565 (Fla. 2d DCA 1997)). Factors weighing in favor of applying Florida law include that Defendant resides in Florida, Florida has an interest in not sheltering individuals complicit in torture, and that Florida law will be determined and applied with greater ease than Iranian law.

To the extent Florida law is determined to apply, equitable tolling may apply to Florida state law claims under circumstances including concealment. *See* Fla. Stat. Ann. § 95.051. Here, the facts alleged plausibly support a finding of concealment. Plaintiffs are elderly Iranian immigrants living in California who were unaware of Defendant's whereabouts. (*See* Doc. 47 FAC ¶¶20–22, 112–114, 116–118.) Defendant also lived in hiding and used aliases during his time in Florida which concealed his location. (¶¶115, 120.) Accepting these allegations as true and taking them in the light most favorable to Plaintiffs, Plaintiffs have plausibly alleged equitable tolling of their state law claims under Florida law.

Plaintiffs should be permitted to proceed with their common law claims at this time. Moreover, accepting Plaintiffs' allegations as true and taking them in the

light most favorable to Plaintiffs, Plaintiffs have plausibly alleged tolling of common law claims under Florida law.

### C.    Plaintiffs Have Adequately Pled Defendant's Liability

Plaintiffs have sufficiently alleged aiding and abetting, conspiracy, and command responsibility liability against Defendant. Defendant's arguments as to the evidentiary value of Plaintiffs' factual allegations (including whether translations have been provided) and whether Plaintiffs will ultimately be able to prove their allegations are properly raised on a motion for summary judgment.

**Aiding and Abetting.** The Eleventh Circuit follows the knowledge standard for aiding and abetting claims, not purpose or intent, simply requiring the defendant knowingly and substantially assist. *Doe v. Drummond Co.*, 782 F.3d 576, 608, n. 44 (11th Cir. 2015); *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).[10] Defendant need not even know which wrongful acts were specifically being committed so long as they were a natural and foreseeable result of the activity Defendant helped undertake. *Halberstam*, 705 F.2d at 488.

Plaintiffs have alleged that Defendant played key roles in leading both the Committee and the Third Division of SAVAK in carrying out their joint policy and

---

[10] Defendant cites to *In re Chiquita Brands Int'l, Inc.*, 190 F. Supp. 3d 1100, 1117 (S.D. Fla. 2016) and the earlier case *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1237 (S.D. Fla. 2012) in support of the premise that more than knowledge is required. As a preliminary matter, neither of these cases are binding on this Court. Moreover, even the *In re Chiquita* court noted that while the allegations there were sufficient "even under a heightened 'purpose' or 'intent' *mens rea* standard" it is "the lesser 'knowledge' standard [that is] applicable under the Eleventh Circuit's recent opinion in *Doe v. Drummond.*" *In re Chiquita Brands Int'l, Inc.*, 190 F. Supp. 3d at 1119.

practice of using torture, arbitrary and prolonged detentions, and extrajudicial killings to control the Iranian public from 1972 through 1978, during which period Plaintiffs were imprisoned and tortured by agents of these organizations. (*See* Doc. 47 FAC ¶¶35, 50, 51, 77, 87, 90, 99, 116.) Defendant's role included: exercising authority over lower-ranking members (*see* ¶¶50, 51), being in charge of interrogations (¶52), and controlling who was detained (¶57). Plaintiffs have also alleged that Defendant personally threatened other individuals (¶60), personally participated in the torture of other detainees (¶70), personally discussed the provision of a coerced interview (¶71), and publicly and vehemently opposed intervention by human rights groups relating to the treatment of prisoners (¶¶72, 73). While Plaintiffs do not allege that Defendant personally participated in their torture, these allegations establish Defendant's knowledge of and participation in wrongful systematic torture operations by SAVAK and the Committee.

These factual allegations, which must be accepted as true at this stage, support the plausible inferences that Defendant knew of the Committee and the Third Division of SAVAK's pattern and practice of detaining and torturing civilians, was aware of his role therein, and knowingly and actively assisted in maintaining a system of institutionalized torture under which Plaintiffs' harm was not only a natural and foreseeable result, but was the intended goal thereof. Plaintiffs have sufficiently alleged aiding and abetting liability.

**Conspiracy.** Defendant's sole argument, made without any citation to fact-

-17-

specific authority, as to the insufficiency of Plaintiffs' pleading conspiracy liability is that the allegations are conclusory. (See Doc. 59 at 22.) This is not the case. Plaintiffs have alleged that from 1972 through 1978, Defendant and every agent of the Committee and the Third Division of SAVAK, including those who specifically tortured Plaintiffs, joined together to carry out policies and practices of torture, arbitrary and prolonged detentions, and extrajudicial killings to control the Iranian public. (*See* Doc. 47 FAC ¶¶35, 50, 51, 77, 87, 90, 99, 116.) Their participation in these organizations from 1972 through 1978 constitutes an agreement at an identified point. *See Jaramillo v. Naranjo,* No. 10-21951-CIV, 2021 WL 4427455, at *6 (S.D. Fla. Sept. 27, 2021). Plaintiffs have sufficiently alleged conspiracy liability.

**Command Responsibility.** Under the doctrine of command responsibility, a superior-subordinate relationship is established where a defendant had "effective control" over the perpetrator of human rights abuses. *See Mamani v. Berzain*, 21 F.Supp.3d 1353, 1376 (S.D. Fla. 2014) (effective control is satisfied if defendant had the legal authority or practical ability to exert control over his subordinates), *aff'd in part, appeal denied in part*, 825 F.3d 1304 (11th Cir. 2016); *see also Paul v. Avril*, 901 F. Supp. 330, 335 (S.D. Fla. 1994) (finding that defendant bore "personal responsibility for a systematic pattern of egregious human rights abuses" committed by his subordinates without requiring defendant's knowledge that the plaintiffs would be specifically targeted); *Xuncax*

-18-

*v. Gramajo*, 886 F. Supp. 162, 174–75 (D. Mass. 1995) (noting defendant's role as Minister of Defense allowed for exercise of control over all subdivisions of army and security forces, not just over those forces directly supervised).

Effective control includes "a material ability to prevent or punish criminal conduct," regardless of how that control is exercised. *Ford v. Garcia*, 289 F.3d 1283, 1290 (11th Cir. 2002) (internal citation and quotations omitted). Effective control may be "*de facto* or *de jure.*" *Id.* at 1291 (citation omitted). "*[D]e jure* authority" over the perpetrators of the underlying crime is "prima facie evidence of effective control." *Id.* (citation omitted). Plaintiffs allege Defendant was the chairperson of the Committee[11] and its effective leader (and the Committee was directed by the Third Division of SAVAK, also headed by Defendant) supporting the presumption of effective control over *all Committee personnel at this stage.* (*See* Doc. 47 FAC ¶¶38, 42, 43, 50–52.) As the Committee was a multiagency task force including SAVAK, this includes SAVAK personnel. Defendant cites no authority to the contrary. Further specific allegations regarding Defendant's effective control include that he had control over who was detained and tortured, such that even the Shah's wife would appeal directly to Defendant for interventions. (¶57; *see also* ¶50, 54-55, 73).[12] These allegations must be accepted

---

[11] Notably, Defendant does not challenge the accuracy of this allegation. (*See, generally,* Doc. 59.)
[12] Acknowledgement of a separate "nominal head" of the Committee from the ranks of the military does not diminish Defendant's authority because a nominal head is definitionally a figurehead with limited powers. (*See* Doc. 59 at 23, n. 15.)

as true at this stage, regardless of whether "actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556 (citation omitted). Plaintiffs have sufficiently alleged command responsibility over all members of the Committee, whether those individuals were also members of SAVAK's Third Division or not.

**D.    As to Any Deficiencies, Leave to Amend Should be Granted**

To the extent this Court finds that Plaintiffs' FAC is deficient, it should grant leave to amend. Federal Rule of Civil Procedure Rule 15(a) establishes a liberal policy of permitting amendment such that "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.,* 868 F.2d 401, 407 (11th Cir. 1989). Should this Court deem it necessary, Plaintiffs can plead additional facts as to their efforts to obtain justice prior to this lawsuit, the threats they faced prior to bringing this lawsuit, their decision to bring their claims now, and Defendant's role in both SAVAK and the Committee and the power and control he wielded in those roles, particularly pertaining to the treatment of detainees.

**V.    <u>Conclusion</u>**

Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss the First Amended Complaint in its entirety, or grant leave to amend to address any deficiencies the Court may find in the pleading.

DATED:  July 7, 2025                    Respectfully submitted,
                                         */s/ Michelle J. Correll*
                                        _____
                                        Michelle J. Correll (Fla. Bar No. 1029106)
                                        Correll Law P.A.

-20-

150 East Palmetto Park Road, Suite 800
Boca Raton, FL 33432
(310) 425-3866
Michelle@Correll-LawFirm.com
*Attorney for Plaintiffs*