**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, and JOHN DOE III, | ) ) ) |
| *Plaintiffs,* | ) ) Case No. 6:25-cv-219-GAP-DCI ) |
| v. | ) ) |
| PARVIZ SABETI, | ) ) |
| *Defendant.* | ) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Plaintiffs concede they undertook no reasonable diligence to learn that Defendant has been a Florida resident for decades. This admission is fatal to their First Amended Complaint ("FAC" or "Amended Complaint"), which should be dismissed with prejudice for failure to plead equitable tolling and failure to state a claim.

**I.    Due Diligence Is a <u>Required</u> Element of Equitable Tolling.**

Plaintiffs must plead extraordinary circumstances <u>*and*</u> due diligence. *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) ("It bears emphasizing . . . that due diligence on the part of the plaintiff, **though necessary**, is not sufficient to prevail on the issue of equitable tolling.") (emphasis added); *Camps v. Bravo,* No. 23-12511, 2025 WL 1733074, at \*5, \*9–

11 (11th Cir. June 23, 2025) (indicating that due diligence is a requirement for the application of equitable tolling, even with extraordinary circumstances); *see also Warfaa v. Ali*, 1 F. 4th 289, 294 (4th Cir. 2021) ("For equitable tolling to apply, a litigant must establish '(1) that he has been pursuing his rights diligently, **and** (2) that some extraordinary circumstance stood in his way and prevented timely filing.'") (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)) (emphasis added); *see also Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) ("Equitable tolling is a rare remedy available only where the plaintiff has exercise[d] due diligence in preserving [her] legal rights.") (internal quotations omitted).

The Supreme Court has been explicit on this issue: "equitable tolling's two components [are] 'elements,' not merely factors of indeterminate or commensurable weight. And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other." *Menominee Indian Tribe of Wisconsin*, 577 U.S. at 256. The Court held, "without resolving litigant's argument that he had 'satisfied the extraordinary circumstances test,' that '[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence.'" *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

2

Plaintiffs must adequately plead *both* elements when, as here, a plaintiff "cho[o]se[s] to anticipate the affirmative defense of equitable tolling in his complaint." *Villareal v. R.J. Reynolds Tobacco Company*, 839 F.3d 958, 973 (11th Cir. 2016). Allowing a complaint that anticipates this affirmative defense and only pleads vague or demonstrably false "extraordinary circumstances" to survive a motion to dismiss would undermine the equitable tolling doctrine and prejudice Defendant. And accepting Plaintiffs' proposed standard of due diligence, whereby a US-based plaintiff may do absolutely no diligence—not even a Google search (or a library visit)—based on implausible fears, would reward a plaintiff who does absolutely nothing to pursue his claims.

## II. Plaintiffs Pled No Due Diligence at All and Thus Cannot Meet the Requirements for Equitable Tolling.

Plaintiffs have not pled diligence *at all* in bringing this lawsuit. Not a single assertion of diligence can be found in *either* Plaintiffs' original Complaint or their Amended Complaint. Thus, even a "minimal" inquiry, *see* Opposition Brief ("Opp.") (D.E. 75) at 12, would find the Amended Complaint deficient and require dismissal. Accordingly, Plaintiffs have no factual allegations concerning due diligence that can be "accepted as true,"[1] *see* Opp. at 14, and they have failed to sufficiently allege equitable tolling.

---

[1] As for the exhibits filed with the Motion to Dismiss, Defendant has properly asked this Court to consider them, not for the truth of the matter within the public records, but instead to notice the fact that all of this information has been available to Plaintiffs for decades. This may indeed be why Plaintiffs have—in two complaints—decided not to make a single

Plaintiffs' made-up theory that "reasonable diligence" is not required for equitable tolling "until *after* the extraordinary circumstances which delayed plaintiffs from pursuing their claims have passed," Opp. at 12–13, has no support in the caselaw and ignores the requirement that equitable tolling requires *both* extraordinary circumstances *and* due diligence.

Not only is Plaintiffs' position unsupported by circuit precedent, but it is nonsensical. Plaintiffs' standard would mean that because of "extraordinary circumstances," Plaintiffs could not, or did not need to, conduct simple Google searches for the name of a defendant—which in this case would have produced a plethora of results showing Defendant resided in the United States and more specifically, Florida. And certainly, the simple task of an Internet search (or a library visit) does not require "more than reasonable diligence." as Plaintiffs suggest. Opp. at 12 n.7.

### III.    Plaintiffs Have Failed to Sufficiently Allege Extraordinary Circumstances.

For the reasons stated in Defendant's Motion to Dismiss (D.E. 59 at 13–17), Plaintiffs have also failed to adequately plead extraordinary

---

allegation regarding due diligence. While this Court can and should take judicial notice of these exhibits without converting this motion to a motion for summary judgment, Plaintiffs argue mutual discovery would be required in the case of a conversion because there is a "factual dispute" as to diligence. Opp. at 6 n.4. Not true. Because Plaintiffs *did not plead* diligence at all and the Eleventh Circuit requires it to be pled when, as here, a plaintiff anticipates an equitable tolling defense, there are no factual disputes on diligence and "no amount of discovery would change th[at] conclusion." *Shuler v. Bd. of Trs. of Univ. of Alabama*, 480 F. App'x 540, 543 (11th Cir. 2012)

4

circumstances. First, Plaintiffs do not plead that they feared reprisal for the past fifty years or that *because* of a fear of reprisal, they did not bring a lawsuit against Defendant. *See* FAC ¶¶ 123–59. Second, Plaintiffs' "fear of reprisal" is primarily based on the Islamic Republic of Iran.[2] Mr. Sabeti is a former official of the Shah's government, *not* the Islamic Republic of Iran, and has long been targeted and vilified by the repressive theocratic regime.[3] Considering Mr. Sabeti's former position in the Shah's SAVAK, Plaintiffs have not plausibly pled a "fear of reprisal" sufficient to qualify as an "extraordinary circumstance."

Third, Plaintiffs have not pointed to a single case involving claims against a former or current agent of a foreign government where the fear of

---

[2] Plaintiffs also allege a fear of reprisal by the Monarchists beginning in 2022. FAC ¶ 145. This is insufficient. For this alleged fear be an "extraordinary circumstance" for a claim that accrued in the 1970s, the fear would have had to begun at some point in the 1970s or 1980s and continued on at least until 2015, ten years (the statute of limitations period for the TVPA) prior to the filing of this suit.

[3] As stated in one of Plaintiffs' own sources cited in their Complaint, FAC ¶ 57 n.6, government officials—especially leaders of SAVAK—within the Shah's government were unceremoniously slaughtered by the Islamic Republic of Iran in the immediate months after the Iranian Revolution. ANDREW SCOTT COOPER, THE FALL OF HEAVEN: THE PAHLAVIS AND THE FINAL DAYS OF IMPERIAL IRAN, p. 511 e-book version (2016) ("Retribution was swift under Iran's new Islamic regime. The names of the many hundreds sent to the firing squads in the first eighteen months of the Islamic republic's existence read like a 'who's who' of Imperial Iran. The rooftop of the school used by Khomeini as a temporary headquarters doubled as an execution chamber, and the crème of the Shah's officer corps was eliminated. . . . Among the high-ranking former officers and officials sent to the firing squad in the blood-soaked first weeks: General Nematollah Nasiri, former chief of Savak[,] . . . General Nasser Moghadam, successor to Nasiri as chief of Savak[,] [and] General Hassan Pakravan, the former head of Savak.").

reprisal was a fear of activities that would have to be conducted *in* the United States, rather than *in* the jurisdiction governed by the foreign government.

Fourth, Plaintiffs cite *Cabello v. Fernandez-Larios* to claim that the mere existence of a repressive regime can equitably toll a statute of limitations. Opp. at 12. That case does not stand for Plaintiffs' broad proposition. The "extraordinary circumstances" in that case were not caused *because* the government was repressive, but because the government *hid* the very fact that a tort occurred and the discovery of the tort did not occur until the government was ousted years later. 402 F.3d 1148, 1155 (11th Cir. 2005).

Finally, Plaintiffs claim that mere lack of information as to a defendant's whereabouts supports "a finding of concealment and equitable tolling." Opp. at 10. The cases they cite say no such thing. In *Jane v. Thomas*, 560 F. Supp. 3d 855, 875 (E.D. Pa. Sept. 15, 2021), the plaintiffs' "lack of information as to Defendant's whereabouts" was dicta. Equitable tolling in that case was premised on civil wars in Liberia, fear of reprisals in Liberia, the defendant's absence from the United States, and defendant's concealment of his identity while immigrating to the United States. *Id.* Plaintiffs would have the Court believe that under *Camps v. Bravo*, Case No. 20-cv-24294 , 2023 WL 11959805, at \*11 (S.D. Fla. June 30, 2023), equitable tolling through an inability to locate a defendant is proper even when a defendant purchases and sells property and opens businesses in Florida under his own name. Yet, the court in *Bravo* only

6

allowed equitable tolling under those facts because the plaintiffs *did not know* defendant's first name when these activities occurred and thus "could not have located [defendant] if they did not know his name." *Id.*[4]

### IV. Plaintiffs' Extraterritorial State Law Claims Must Be Dismissed.

Plaintiffs chose not to address Defendant's arguments that Florida law, which Plaintiffs conclude is the proper choice of law for their state claims, Opp. at 15, does not apply to purely extraterritorial claims. *See* D.E. 59 at 18–20. Defendant's arguments in his Motion to Dismiss (D.E. 59 at 18–20) stand. Counts II through VII must be dismissed.

### V. Plaintiffs Failed to Adequately Plead Secondary Liability.

As stated in the Motion to Dismiss (D.E. 59 at 20–25), Plaintiffs' claims of secondary liability are based on conclusory allegations or unsupported allegations "on information and belief." Plaintiffs' Opposition brief relies on these problematic allegations, and thus their claims must be dismissed.[5]

For all the above reasons, the Court should grant Defendant's Motion to Dismiss Plaintiffs' Amended Complaint, with prejudice.

---

[4] To support their concealment allegations, Plaintiffs claim that "Parviz Mark Sabeti" is an "alias" of Defendant. Opp. at 11 n.6 (citing D.E. 59-6 at 24). This is incredulous and unserious. Mr. Sabeti's first and last name are literally spelled out for Plaintiffs in this public record.

[5] Plaintiffs falsely claim that Defendant did not challenge the accuracy of their allegation that Defendant was the chairperson of the Committee. Opp. at 19 n.11. While Defendant had no requirement to do so in his Motion to Dismiss, he did so explicitly: "Plaintiffs also allege the **patently false** statement that Defendant served as Chairperson or 'de facto leader' for the 'Joint Committee to Fight Terrorism[.]'" D.E. 59 at 3 (emphasis added).

Dated: July 16, 2025

Respectfully submitted,

**MARCUS NEIMAN
RASHBAUM & PINEIRO LLP**

*/s/ Jeffrey E. Marcus*
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com

One Biscayne Tower
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
(305) 400-4260

**LEVY FIRESTONE MUSE LLP**

Joshua A. Levy, Esq.
*Admitted PHV*
jal@levyfirestone.com
Justin A. DiCharia, Esq.
*Admitted PHV*
jdicharia@levyfirestone.com

900 17th Street N.W., Suite 605
Washington, D.C. 20006
(202) 845-3215

*Attorneys for Mr. Sabeti*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July 2025, the foregoing was served on all counsel of record via CM/ECF.

*/s/Jeffrey E. Marcus*