# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOHN DOE I, JOHN DOE II, and
JOHN DOE III,

v.                                                                Case No: 6:25-cv-219-GAP-DCI

PARVIZ SABETI,

        Defendants.

## ORDER

This cause comes before the Court without oral argument on Defendant's Motion to Dismiss. Doc. 59. The Court has also considered Plaintiff's Response in Opposition and Defendant's Reply. Doc. 75; Doc. 80.

### I. Background

On February 10, 2025, Plaintiffs John Doe I, John Doe II, and John Doe III ("Plaintiffs") filed suit against Defendant Parviz Sabeti ("Defendant") seeking damages for claims under the Torture Victim Protection Act ("TVPA") and a slew of state tort claims. Doc. 1; *see* TVPA, Pub. L. No. 102-256, 106 Stat. 73 (1992). Defendant filed a Motion to Dismiss Plaintiff's initial Complaint on April 14, 2025. Doc. 40. However, on May 5, 2025, Plaintiffs filed their First Amended Complaint ("FAC"), mooting Defendant's Motion to Dismiss. Doc. 47; *see* Doc. 49; *Fritz v.*

*Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

The FAC alleges that Defendant led and oversaw secret policing, abuse, and torture in the 1970s during the government of Mohammad Reza Pahlavi, the former Shah of Iran. Doc. 47, ¶ 1. Plaintiffs' FAC further details Defendant's alleged involvement as head of the Third Division of SAVAK—the intelligence organization and secret police force of the former Shah—and the Joint Committee to Fight Terrorism (the "Committee"). *See id.*, ¶¶ 1-2. Plaintiffs allege that they were denied due process while in the custody of SAVAK throughout a broad array of extrajudicial detainments, imprisonments, and repetitive mental and physical torture overseen by Defendant pursuant to his roles with SAVAK and the Committee. *See, e.g., id.*, ¶¶ 3-6.

Plaintiffs allege that Defendant concealed his identity after fleeing Iran in 1978, hindering their ability to bring the instant claims. *Id.*, ¶¶ 7, 24, 112-17, 121. However, the FAC contends that he has been emboldened to step out after political unrest materialized in Iran in 2023, which includes producing a seven-hour documentary "defending his tenure in SAVAK." *Id.*, ¶¶ 7, 116-22. It was this appearance by Defendant which first "allowed Plaintiffs the opportunity to even consider pursuing [their] claims." *Id.*, ¶ 121. Plaintiffs state that while they do not

pursue their claims "without fear, they feel that they can no longer wait until such time." *Id.*, ¶ 159.

On June 2, 2025, Defendant filed a renewed Motion to Dismiss Plaintiff's FAC, arguing primarily that Plaintiffs' claims are time-barred. *See generally* Doc. 59. Defendant also complains that Plaintiffs fail to allege secondary liability under the TVPA and that their state law tort claims cannot apply extraterritorially. *Id.* at 18-25. In their Response, Plaintiffs argue for the application of the doctrine of equitable tolling and reject Defendant's other contentions. *See* Doc. 75. On July 16, 2025, Defendant docketed his Reply leaving the matter ripe for adjudication. *See* Doc. 80.

**II.   Legal Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g.*, *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

**III.   Analysis**

    **A. Florida Common Law Claims**[1]

---

[1] Plaintiffs' First Amended Complaint ("FAC") does not specify which law its common law claims for assault, battery, and civil conspiracy (Counts II, III, & VII) arise under. *See* Doc. 47, ¶¶ 168-79, 208-13. However, the FAC states that Plaintiffs' claims for intentional and negligent infliction of emotional distress (Counts IV & V) state a claim "under the laws of the State of Florida" and their negligence claim (Count VI) is "actionable under the laws of the State of Florida and Iran." *Id.*, ¶¶ 189, 201.

Plaintiffs' obfuscatory Response to Defendant's Motion to Dismiss these claims appears to inexplicably contend that the Court need not determine to which law their claims are tethered.

Defendant argues that Plaintiffs' common law claims must be dismissed because Florida does not apply tort law extraterritorially and Plaintiffs' claims are premised on "acts by Iranians against Iranians inside Iran." Doc. 59 at 18-19. As Defendant recognized in his Reply, Plaintiffs do not refute his argument. Doc. 80 at 7; Doc 75 at 14-16; *see Glass v. Lahood*, 786 F.Supp.2d 189, 210 (D.D.C. May 20, 2011) ("[I]t is well understood…that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quotation and citation omitted).

Therefore, and in light of the fact that "Florida courts have consistently declined to apply Florida law outside territorial boundaries unless a statute contains an express intention that its provisions are to be given extraterritorial effect[,]" Plaintiffs' common law claims fail to state a claim under Florida law. *U.S. v. Berdeal*, 595 F.Supp.2d 1326, 1329 (S.D. Fla. Jan. 22, 2009); *see also In re Chiquita Brands Int'l, Inc. Alien Tort Statute Shareholder Derivative Litigation*, 792 F.Supp.2d

---

Doc. 75 at 14; *see Roe v. Aware Women Center for Choice, Inc.*, 253 F.3d 678. 684 (11th Cir. 2001) ("[A]t a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery **under some viable legal theory**.") (emphasis added). Plaintiffs then engage in a conflict of law analysis citing only Florida law (and seemingly concluding that Florida law is applicable) and reiterate that equitable tolling (under Florida law) should apply to their common law claims. Doc. 75 at 14-16. In the absence of any coherent argument otherwise, the Court applies Florida law to Plaintiffs' common law claims. *See id.*; Doc. 59 at 18-20.

1301, 1355 (S.D. Fla. Jun. 3, 2011) ("There are no allegations that this conduct had or was intended to have a substantial effect within the state[] of Florida… Nor are the state-law claims alleged here—e.g., ordinary tort claims for assault and battery, negligence, wrongful death, etc.—matters of universal concern recognized by the community of nations.") (reversed on other grounds in *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014)). Counts II through VII are due to be **DISMISSED**.

### B. Secondary Liability

Defendant next argues that Plaintiffs—who do not allege that Defendant personally tortured them—have failed to adequately plead secondary liability (under three different theories) for their TVPA claim.[2] Doc. 59 at 20. Plaintiffs counter that they have sufficiently alleged aiding and abetting, conspiracy, and command responsibility secondary liability. *See* Doc. 75 at 16.

### i. Aiding & Abetting Liability

To be found liable for aiding and abetting, the Eleventh Circuit requires that a defendant "gave knowing substantial assistance to the person or persons who

---

[2] "An examination of legislative history indicates that the TVPA was intended to reach beyond the person who actually committed the acts, to those ordering, abetting, or assisting in the violation.". *Cabello v. Fernandez-Lairos*, 402 F.3d 1148, 1157 (11th Cir. 2005); *see also Doe v. Drummond Co., Inc.*, 782 F.3d 576, 607 (11th Cir. 2015) ("[S]econdary or indirect theories of liability recognized by U.S. law are available for claims brought under the TVPA.").

committed the wrongful act." *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 608 (11th Cir. 2015) (recognizing the standard for aiding and abetting liability is "knowledge").[3]

Despite asserting that the FAC makes only vague and conclusory allegations regarding secondary liability, Defendant proceeds to recite a plethora of plausible allegations Plaintiffs have levelled. *See* Doc. 59 at 20-22. Indeed, to support their summary allegation that Defendant "provided knowing, substantial assistance to the direct perpetrators" of Plaintiffs' torture and abuse, the FAC exhaustively alleges the extrajudicial, abusive, and torturous activities perpetrated by the Third Division of SAVAK and—notably—that Defendant led this organization. Doc. 47, ¶¶ 33-75; *see, e.g.*, *id.*, ¶ 63 ("As part of Defendant's authority in SAVAK and the Committee, he supervised the arrest, detention, and treatment of political prisoners."), ¶ 50 ("By 1972 Defendant had ascended to the head of the Third Division and was a Deputy Director of SAVAK.").

Defendant decries a selection of Plaintiffs' citations to corroborating sources as unauthenticated, without official translation, and out of context. *See* Doc. 59 at

---

[3] Defendant cites to two district court cases from the Southern District of Florida for the proposition that "more than mere knowledge" is required. Doc. 59 at 20 (quoting *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1237 (S.D. Fla. 2012) and citing *In re Chiquita Brands Intl., Inc. Alien Tort Stat. and Shareholder Derivative Litig.*, 190 F. Supp. 3d 1100, 1117 (S.D. Fla. Jun. 1, 2016)). But *Garcia*, a non-binding decision, was decided several years before the *Drummond* case established the Eleventh Circuit "knowledge" standard. 911 F. Supp. 2d at 1222; *see Drummond*, 782 F.3d at 607. Moreover, *In re Chiquita Brands Int'l* plainly recognizes that the Eleventh Circuit requires only a "knowledge" standard under *Drummond*. 190 F. Supp. 3d at 1117.

- 7 -

21-22. However, Defendant ignores several seemingly reliable sources, including a report to the International Commission of Jurists authored contemporaneously in 1976 which generally supports Plaintiffs' allegations regarding Defendant's position within the SAVAK and his control over its forces.[4] *See* Doc. 47 at 11, n.2 (citing William J. Butler, Esq., *Report on Human Rights in Iran*, *in* HUMAN RIGHTS AND THE LEGAL SYSTEM IN IRAN 1, 20 (1976)). Nor does Defendant acknowledge a 1978 U.S. Central Intelligence Agency ("CIA") report which recognized him as "Chief of Department 3 (Internal Security) of SAVAK" and even considered him to be a potential candidate to take over as chief of all of SAVAK. See NAT'L FOREIGN ASSESSMENT CENTER, CENTRAL INTELLIGENCE AGENCY, IRAN AFTER THE SHAH 4, 6, 16 (August 1978) (approved for release Feb. 15, 2018),

---

[4] William J. Butler's *Report on Human Rights in Iran* described that:

    a. SAVAK security officers "arrest and detain suspects…for long periods of time, sometimes turning over the prisoner to a military tribunal for trial and sometimes even releasing him after long periods of incarceration and even torture";

    b. "As a practical matter, most political arrests are made by decision of the Joint Committee of the National Police Force and the SAVAK. This Committee, presided over by the much feared chairman Sabeti, is the main investigative committee for internal security.";

    c. "This Committee has considerable power";

…

    f. SAVAK's "power is nearly absolute."

William J. Butler, Esq., Report on Human Rights in Iran, in HUMAN RIGHTS AND THE LEGAL SYSTEM IN IRAN 1, 20 (1976).

https://www.cia.gov/readingroom/docs/iran%20after%20the%20shah%5B15401076%5D.pdf.

In addition, Plaintiffs' FAC plainly alleges that Defendant provided "knowing substantial assistance" to Plaintiffs' torturers by "direct[ing] the actions of SAVAK agents, within both the Third Division and the Committee[,]" responsible for the interrogation of dissidents within Iran and abroad. Doc. 47, ¶ 60; *see Drummond*, 782 F.3d at 607. The FAC even goes so far as to name the specific individuals who allegedly tortured Plaintiffs and affirmatively alleges that Defendant controlled them. Doc. 47, ¶¶ 58, 61, 65. Defendant's Motion demands irrefutable proof, but Plaintiffs are not required to prove their claims at the pleading stage. These allegations, buttressed by several reliable sources cited in the FAC, are clearly sufficient to plead aiding and abetting liability under the TVPA. *See In re Chiquita Brands Intl., Inc. Alien Tort Stat. and Shareholder Derivative Litig.*, 190 F. Supp. 3d 1100, 1117-19 (S.D. Fla. 2016); *see also, e.g.*, *Twombly*, 550 U.S. at 554–55.

### ii. Conspiracy

Defendant next argues—in one sentence—that Plaintiffs' FAC fails to allege any non-conclusory agreement between Defendant and the individuals responsible for Plaintiffs' harms and thus cannot state a claim under a conspiracy theory. Doc. 59 at 22. A conspiracy requires a showing that "(1) two or more persons agreed to commit a wrongful act, (2) [Defendant] joined the conspiracy knowing of at least

one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy." *Cabello*, 402 F.3d at 1159.

Plaintiffs have adequately alleged the basis of a conspiracy theory of secondary liability. *See, e.g.*, Doc. 47, ¶¶ 105, 108. Their FAC plausibly contends that Defendant and the named alleged torturers of Plaintiffs (and others within the Committee) agreed to use the alleged detainment and torture methods in furtherance of their goal to suppress opposition to the Shah's regime and that they did so employ them against Plaintiffs. *See In re Chiquita Brands Intl.*, 190 F. Supp. 3d at 1119-20.

### iii. Command Responsibility & Agency

Finally, Defendant argues that Plaintiffs cannot establish secondary liability under the command responsibility doctrine ("CRD"). Doc. 59 at 23-25. The CRD requires a showing of three elements but Defendant only argues that the FAC fails to allege the first: "(1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime[.]" *Drummond*, 782 F.3d at 609. "In order to establish the first element…plaintiffs must allege facts plausibly suggesting that the defendant[] had 'effective control' over the perpetrators."[5] *Id.*

---

[5] The other two factors, which Defendant apparently concedes, are: "(2) that the commander knew or should have known, owing to the circumstances at the time, that his

- 10 -

Here, Defendant admits to having worked in SAVAK for twenty years, including having led the Third Division, as Plaintiffs have alleged. *See* Doc. 55-1, ¶¶ 2-4. Nevertheless, Defendant contends that the FAC insufficiently alleges his "effective control" over the alleged torturers because it does not allege that they "were SAVAK employees within the Third Division, the only division Plaintiffs allege Defendant led." Doc. 59 at 23. However, it is Defendant's conclusions that "do not logically follow." *Id.* at 25.

First, Plaintiffs directly address this issue in their FAC by stating that Defendant's positions as head of SAVAK's Third Division and chairman of the Committee resulted in a "superior-subordinate relationship over members/employees of SAVAK and the Committee." Doc. 47, ¶ 109. 105-11. Plaintiffs explicitly describe Defendant's "effective control" within the Iranian internal security apparatus and specifically over Plaintiffs' torturers. *Id.*, ¶¶ 105-11, 107 ("The members of the security forces who detained and tortured Plaintiffs were under Defendant's control."). Moreover, the FAC contains detailed allegations eliciting Defendant's broad, authoritative role within SAVAK and the Committee—

---

subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes." *Drummond*, 782 F.3d at 609.

as Defendant recognizes.⁶ *See id.*, ¶¶ 50-56; Doc. 59 at 24-25. This is sufficient to plead secondary liability under the CRD. *See Iqbal*, 556 U.S. at 680.

### C. Equitable Tolling

Defendant's primary argument in support of dismissal is that Plaintiffs' claims are time-barred. *See* Doc. 59 at 6-18. However, Plaintiffs counter that equitable tolling applies to their lawsuit. Doc. 75 at 6. In his Reply, Defendant insists that due diligence is a required element of equitable tolling and that because Plaintiffs have not plead any diligence "at all," then dismissal is proper under Eleventh Circuit precedent. Doc. 80 at 3; *see Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 973 (11th Cir. 2016).

"A statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in [their] complaint." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)) (citation and internal quotation marks omitted). However, "[a] plaintiff nonetheless can plead himself out of court by

---

⁶ *See, e.g.*, Doc. 47, ¶ 58 ("During the relevant period, **subordinates**—including Mohammad Ali Shabani (alias Hosseini ), Manouchehr Vazifekhah (alias Manouchehri), Mohammad Hassan Nasseri (alias Azodi), Armanm, and Deghan—were expected to follow without question the instructions of superiors, **including Defendant Sabeti**. Insubordinate SAVAK and Committee members risked being deemed dissident and facing the same inhumane conditions they subjected others to.") (emphasis added).

alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling." *Villareal*, 839 F.3d at 971.

Plaintiffs allege in the FAC that they and many others in the Iranian diaspora were entirely unaware of Defendant's whereabouts from the time he fled Iran in 1978 until he appeared in a social media post on February 11, 2023. Doc. 47, ¶¶ 24, 116. The FAC further alleges that Defendant concealed his identity in those intervening years, supported by references to Defendant's daughter confirming that her family moved, changed their names, and lived in hiding.[7] *Id.*, ¶ 112-22. Along with substantial allegations that Plaintiffs had no available remedies in Iran or elsewhere—compounded by lethal threats emanating from both Iran and the United States—the FAC satisfies equitable tolling pleading requirements at the Rule 12(b)(6) stage. *See id.*, ¶¶ 123-59.

Defendant misconstrues the Eleventh Circuit's holding in *Villareal*—a fundamentally distinguishable case involving discrimination claims emanating from the plaintiff's employment application. 839 F.3d at 961-62; *see* Doc. 80 at 3. In that case, the court held that the plaintiff was "not entitled to equitable tolling

---

[7] Defendant contends that Plaintiffs misrepresent his daughter's statements about living in hiding, but the news interview cited by Plaintiffs supports the statements reported in the FAC. *See* Doc. 59 at 16; Doc. 47, ¶ 120; NUFDI, Dr. Pardis Sabeti, Iran Uncovered #12, YOUTUBE (Nov. 2, 2024), https://www.youtube.com/watch?v=RVZFi_0g_j8 (8:18—"My dad hasn't come out, he hasn't spoken."; 8:55—"He recently kind of came out of the woodworks when my mom brought him to a protest.")

because he admitted facts that foreclose a finding of diligence"—not because he failed to "negate an affirmative defense in [his] Complaint."[8] *Villareal*, 839 F.3d at 972 (emphasis added); *Wainberg*, 93 F.4th at 1224. The court was merely recognizing that the plaintiff's allegations in the complaint foreclosed his ability to later prove that he was diligent because he "never contested that **he did nothing** to ascertain the status of his application…" *Id.* at 971-73 (emphasis added).

In the TVPA context, courts in the Eleventh Circuit conduct a "fact-specific" inquiry to deduce whether the case demonstrates sufficient "extraordinary circumstances" for the application of equitable tolling. *Cabello*, 402 F.3d at 1154-55. At the motion to dismiss stage, however, the defense will be dismissed only if "it appears beyond doubt that [Plaintiffs] can prove no set of facts in support of [their] claim that the statute of limitations should be equitably tolled." *In re Chiquita Brands Int'l,* 190 F.Supp.3d at 1116 (quoting *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998)) (internal quotations omitted).

Plaintiffs' FAC alleges sufficient facts which may justify an equitable tolling of the statute of limitations here—including that through some measure of

---

[8] Indeed, in recognizing that the plaintiff's pleadings foreclosed the application of equitable tolling to his claims, the *Villareal* court merely referenced the dispositive standard—not a pleading standard—that "requires the party seeking tolling to *prove*" diligence and extraordinary circumstances. 839 F.3d at 971. It is axiomatic that Plaintiffs need not "prove" any aspect of their claims at the pleading stage. *See, e.g., Twombly*, 550 U.S. at 554–55.

diligence, Plaintiffs learned of Defendant's present whereabouts through the February 11, 2023, post on X. *See* Doc. 47, ¶ 116-17; *compare to Villareal*, 839 F.3d at 972 ("Specifically, he alleged that he did nothing for more than two years between his initial application and the communication from the lawyer."). Thus, "there is no basis for dismissing the claims against [Defendant] on limitation grounds on the face of the pleadings." *In re Chiquita*, 190 F.Supp.3d at 1116 (collecting and citing cases).[9]

However, recognizing the potentially dispositive nature of the statute of limitations issue in this case and in the interest of judicial efficiency, the Court will order a bifurcation of these proceedings to first determine, after reciprocal discovery and complete briefing, whether Plaintiffs' claims are prohibited by the TVPA's time limits.[10] *See* Rule 16(c)(2)(E),(F),(L),(M); Rule 42(b).

---

[9] Moreover, "when a plaintiff is entitled to equitable estoppel, the clock stops upon the tolling of the limitations period and begins again when the impediment to bringing suit is removed." *Cabello v. Fernandez-Lairos*, 402 F.3d 1148, 1156 (11th Cir. 2005). Here, Plaintiffs plausibly allege that their claims were tolled by two impediments which were "beyond [their] control and unavoidable even with diligence[:]" the lack of an available remedy in the Islamic Republic of Iran (which remains ongoing) and the unknown whereabouts of Defendant until 2023. *Id.* at 1155; *see* Doc. 47, ¶¶ 122-131.

[10] District courts have "broad discretion in deciding how best to manage cases before them." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1167 (11th Cir. 2014); *see* Fed. R. Civ. P. ("Rule") 16(c)(2). "It is one thing to demand that plaintiffs come forward with some evidence supporting certain basic elements of their claims as a way of organizing (and maybe bifurcating) the discovery process once a case is at issue, and dealing with discrete issues or claims by way of partial summary judgment motions. It is quite another to begin compiling, analyzing, and addressing evidence (pro and con) concerning the plaintiffs' allegations without reciprocal discovery before those allegations have been determined to be legally sufficient under Rule

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 40) is hereby **GRANTED in part**:

1. Plaintiffs' state law tort claims in Counts II, III, IV, V, VI, and VII are hereby **DISMISSED without prejudice**;

2. Defendant's Motion is otherwise **DENIED**; and

3. These proceedings shall be **BIFURCATED** to first determine whether the doctrine of equitable tolling applies to Plaintiffs' TVPA claim in Count I:

    a. Discovery shall continue, restricted to the issue of equitable tolling, until **November 10, 2025**;

    b. Defendant shall file his motion for summary judgment on the issue of equitable tolling **on or before December 1, 2025**;

    c. Plaintiffs' response shall be due **on or before December 22, 2025**;

    d. Defendant may file a reply, due **on or before January 5, 2026**.

4. The Court's Endorsed Order (Doc. 58) directing the parties to file a Case Management Report ("CMR") within ten days of the instant Order is hereby **VACATED**. The parties shall file a CMR, pursuant to

---

12(b)(6)." *Id.* at 1168.

Local Rule 3.02(a),(d)(1), **within ten days** of the docketing of the Court's order resolving Defendant's motion for summary judgment on the issue of equitable tolling.

**DONE** and **ORDERED** in Orlando, Florida on August 12, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties