# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| JOHN DOE I, JOHN DOE II, and JOHN DOE III, | ) ) ) |
| Plaintiffs, | ) ) Case No. 6:25-cv-219-GAP-DCI |
| v. | ) ) ) |
| PARVIZ SABETI, | ) ) ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF D.E. 94

Plaintiffs seek to withhold from Defendant Parviz Sabeti ("Defendant" or "Mr. Sabeti") the very information that could prove case dispositive <u>during this stage of bifurcated discovery: their names</u>. If it turns out Defendant knows and has previously interacted with Plaintiffs, this would disprove Plaintiffs' claims of concealment and due diligence and defeat their claims of equitable tolling.[1] But without knowing Plaintiffs' identities, Defendant is deprived of this argument and cannot fully prosecute his defense that Plaintiffs' claims are untimely by a matter of decades. Plaintiffs' Opposition ("Opposition") (D.E. 103) fails to address this.

---

[1] Equitable tolling requires (1) due diligence and (2) extraordinary circumstances (such as fraudulent concealment) that prohibited the plaintiffs from timely filing their action. *See Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 973 (11th Cir. 2016); <u>Cabello v. Fernandez-Larios</u>, 402 F.3d 1148, 1155–56 (11th Cir. 2005).

1

**(I) Defendant's Motion to Modify Protective Order ("Defendant's Motion") (D.E. 94) is no motion for reconsideration, as Plaintiffs claim.** Defendant has not previously addressed the Court's Protective Order (D.E. 82-1), which governs the first round of fact discovery related to Plaintiffs' equitable tolling defense. Defendant's Motion to Modify also does not revisit the Court's granting of public-facing pseudonymity to Plaintiffs (the subject of the prior round of briefing), but only the Protective Order's new "attorney eyes only" ("AEO") restrictions which Defendant has not briefed before.[2] Simply put, the Court has never had briefing on why, without knowing Plaintiffs' identities, Defendant cannot fully avail himself of his statute of limitations defense and is deprived of possible opportunities to dispose of the case at this first phase.

Plaintiffs' reliance on *Steele v. United States*, No. 1:14-CV-1523-RCL, 2023 WL 6215790 (D.D.C. Sept. 25, 2023), *see* Opp. at 3, is misplaced because *Steele* concerned a motion for clarification of an order on a motion for summary judgment. Defendant's Motion is not a motion for clarification. It is a motion

---

[2] Though Plaintiffs argue that Defendant "could" have predicted the Court's recent AEO restrictions, even the original *ex parte* Order issued in February (D.E. 16) noted that "Plaintiffs' willingness to confidentially permit their identification for limited discovery purposes underlines that their anonymity poses no unique threat of fundamental unfairness to Defendant in his ability to defend himself. *Id.* at 9 (presumably referring to Plaintiffs' admission that "if this Court deems it necessary, Plaintiffs will agree to provide their identities to Defendant subject to a protective order limiting Defendant's disclosure of their identities," D.E. 4 at 22).

to modify an aspect of the Protective Order—governing who gets to know the Plaintiffs' identities during this phase of the litigation—that was never sought by Plaintiffs as a form of relief and therefore was not addressed (let alone contemplated) by the parties in their prior briefing. In line with the Court's previous ruling on when a motion for reconsideration standard is appropriate,[3] this Motion also should be reviewed under the *de novo* standard.

**(II) Despite Plaintiffs' Claims, *Doe v. Islamic Salvation Front* Supports Defendant's Motion.** In *Doe v. Islamic Salvation Front*, the Court shielded the plaintiffs' identities from the defendant until the point when he was being "denied information crucial to his defense." Case No. 96-cv-02792, D.E. 101 at 5 (D.D.C. Sept. 29, 2000). In that case, the court found that the defendant needed "information about plaintiffs' identities and their whereabouts at the time of the events in question in order to prepare his defense." *Id.* at 4. Here, that time is now: Defendant is being denied "information crucial to his defense."

Only Defendant, and not his counsel, can know whether he has ever interacted with Plaintiffs, directly or indirectly, or whether he had any mutual contacts with Plaintiffs during the relevant time period. This is "information crucial" to Defendant's ability to rebut Plaintiffs' claims of concealment, due

---

[3] *See* D.E. 82 at n.2 (applying the *de novo* standard where Defendant never had an opportunity to address the Plaintiffs' *ex parte* motion).

diligence, and even of fear of reprisal. At present, Defendant cannot pursue these possible arguments because his counsel cannot disclose Plaintiffs' names to him, denying Defendant "information crucial to his defense." *Id.* at 5.

**(III) Plaintiffs' Support for the Attorneys' Eyes Only ("AEO") Limitations Here Is Inapplicable.** Plaintiffs argue that cases in this Circuit permit Attorneys' Eyes Only ("AEO") limitations, but those cases are distinguishable, and, in each case, the plaintiffs' identities were not "information crucial" to the defendant's case.

First, *Freedom from Religion Found., Inc. v. Emanuel Cty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1361 (S.D. Ga. 2015), is inapplicable because that AEO ruling had no practical effect, as "defendant Thompson concedes that she knows the identities of the Doe plaintiffs, and she assumes that this is true for 'the other defendants as well.'" *Id.* (internal citation omitted). The court also noted that "[w]here the defendants already know the plaintiffs' names . . . their interest in fairness is diminished because defendants may depose plaintiffs, request ordinary discovery, and otherwise litigate the case normally." *Id.*

Plaintiffs' use of *Doe 1 v. Trump*, No. CV 17-1597, 2017 WL 6816476, D.E. 38 (D.D.C. Sept. 13, 2017), is equally misplaced. The plaintiffs in that case filed suit against government agencies and employees over federal policy. *Id.*, D.E. 9. Contrary to Plaintiffs' misleading parenthetical, the defendants in that case *were* given access to plaintiffs' identities through their agents (federal

4

agency employees and counsel). *Id.*, D.E. 38. The parties jointly moved the court for a protective order that allowed government attorneys and certain federal employees access to plaintiffs' identities because "[t]he parties . . . recognize[d] that **to defend this litigation, defendants need to know the identities of the Pseudonym Plaintiffs**." *Id.*, D.E. 37 (emphasis added). The proposed protective order, which was entered by the court without edits, "provide[d] a mechanism for the Pseudonym Plaintiffs to identify themselves **to defendants** while limiting defendants' use of dissemination of that information." *Id.* (emphasis added); *compare id.*, D.E. 37-1, *with* D.E. 38.

Plaintiffs also cite *Alexander v. Falk*, No. 16-cv-2268, 2017 WL 3749573, at *1 (D. Nev. Aug. 30, 2017), a defamation case in which the statements at issue related to plaintiff entertainers who performed under pseudonyms. The *Falk* defendants only knew plaintiffs by their pseudonyms prior to the lawsuit, and their alleged defamatory remarks identified the plaintiffs using those pseudonyms. Thus, knowing the true identity of the plaintiffs was not necessary to defend against defamation. *Id.* at 5. In *Falk*, defendants effectively knew the identities of the plaintiffs to the same extent that is being requested here—enough information about the plaintiffs to be able to fully defend the case.

Finally, Plaintiffs allege that *Florida Abolitionist, Inc. v. Backpage.com LLC*, 2018 WL 2017535 (M.D. Fla. May 1, 2018); *Plaintiff B. v. Francis*, 631

5

F.3d 1310, 1315 (11th Cir. 2011); and *C.S. v. Choice Hotels Int'l*, 2021 WL 2792166 at *6 (M.D. Fla. Jun. 11, 2021)), which Defendant cited in his opening brief (D.E. 60 at 10), do not support Defendant's position because those cases "involve[d] accusations that the defendants had direct contact with the plaintiffs and had directly abused them, and as such, the plaintiffs' in those cases were directly relevant to the defendants' defenses" and "[t]his case is about command control." Opp. at 10. As it stands, the bifurcated discovery in this case is about equitable tolling and not the substance of Plaintiffs' TVPA claims. Command control is not at issue here. At issue now is whether Plaintiffs undertook due diligence, and whether Defendant "had direct contact with the plaintiffs" is "directly relevant to [D]efendant['s] defense[ ]" of equitable tolling because it would show that Plaintiffs conducted no diligence or that their allegations of extraordinary circumstances were made in bad faith.

**(IV) Plaintiffs' Additional Arguments Are Unconvincing.** Defendant's counsel, Mr. Aramesh, does not know whether Plaintiffs had contact with Defendant directly or indirectly, and Mr. Aramesh cannot ask Defendant for this information. Thus, Mr. Aramesh's national security expertise and Iranian descent do not cure this prejudice to Defendant, and Mr. Aramesh's background is incomparable to Defendant's decades' worth of knowledge on Iran, Iranian politics, the Iranian diaspora, and *his own life*.

6

Further, Defendant did not misinterpret Plaintiffs' discovery requests for documents about the John Doe Plaintiffs. Plaintiffs have not amended their discovery requests, and until they do so, their discovery requests seek documents that would require Defendant to know Plaintiffs' identities. Finally, the Court has already indicated that should Plaintiffs move on to the merits portion of discovery, Plaintiffs would need to provide their identities to Defendant. There is no reason that the same protective order that would be used in any future phases of litigation could not be used here.

**(VI) Defendant Can, in the Alternative, Satisfy § 1292(b).** Defendant's knowledge of Plaintiffs' identities during fact discovery on equitable tolling, where such knowledge could prove case-dispositive, is a controlling question of law. There are substantial grounds for difference of opinion because this exact issue has *never* been decided in the Eleventh Circuit, and case law outside the circuit indicates that pseudonymity cannot deprive a defendant of "information crucial to his defense." *ISF*, Case No. 96-cv-02792, D.E. 101 at 5. An immediate appeal would materially advance the ultimate termination of the litigation because if Defendant knows and has previously interacted with the individual Plaintiffs or has had mutual contacts with Plaintiffs, then it is likely they cannot satisfy the elements of equitable tolling.

This Court should amend the Protective Order, or, in the alternative, certify this issue for appeal under § 1292(b).

DATED: September 30, 2025

        Respectfully submitted,

        **MARCUS RASHBAUM**
        **PINEIRO & MEYERS LLP**

        ***/s/ Jeffrey E. Marcus***
        Jeffrey E. Marcus, Esq.
        jmarcus@mrpfirm.com
        Florida Bar No. 310890
        Kathryn Meyers, Esq.
        kmeyers@mrpfirm.com
        Florida Bar No. 0711152
        One Biscayne Tower
        2 South Biscayne Blvd., Suite 2530
        Miami, Florida 33131
        (305) 400-4260

        **LEVY FIRESTONE MUSE LLP**

        Joshua A. Levy, Esq.
        jal@levyfirestone.com
        DC Bar No. 475108
        Justin A. DiCharia, Esq.
        jdicharia@levyfirestone.com
        DC Bar No. 1671109

        900 17th Street N.W., Suite 605
        Washington, D.C. 20006
        (202) 845-3215

        **WHITCOMB, SELINSKY, P.C.**

        Arash Aramesh, Esq.
        Ari@whitcomblawpc.com
        California Bar No. 354651
        DC Bar No. 90023647
        Texas Bar No. 24107061
        10940 Wilshire Boulevard

Suite 600
Los Angeles, CA 90024
Tel: (303) 534-1958

*Attorneys for the Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September 2025, the foregoing was served on all counsel of record via CM/ECF.

*/s/ Jeffrey E. Marcus*
Jeffrey E. Marcus