UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE I, JOHN DOE II, and
JOHN DOE III,

v.                                                                      Case No: 6:25-cv-219-GAP-DCI

PARVIZ SABETI,

        Defendants.

## ORDER

This cause comes before the Court on Defendant's Objections to the Magistrate Judge's Report and Recommendation. Doc. 128; *see* Doc. 120. The Court has also considered Plaintiffs' Response in Opposition and Defendant's Reply. Doc. 130; Doc. 136.

**I.  Background**

On February 10, 2025, Plaintiffs John Doe I, John Doe II, and John Doe III ("Plaintiffs") filed suit against Defendant Parviz Sabeti ("Defendant") under the Torture Victim Protection Act ("TVPA") alleging that he led and oversaw secret policing, abuse, and torture during the government of Mohammad Reza Pahlavi, the former Shah of Iran. Doc. 1, ¶ 1. Plaintiffs simultaneously filed an *Ex Parte* Motion for Leave to Proceed by Pseudonym with their Complaint. Doc. 4. Plaintiffs argued that if their identities were not protected, they would suffer "real threats to

[their] safety posed by potential retaliation from the Iranian government and from violent supporters of the former monarchy." *Id.* at 2.

The Court issued an Order (the "Pseudonym Order") provisionally granting Plaintiffs' motion subject to reconsideration upon appearance by Defendant. *See* Doc. 16; *Plaintiff B v. Francis*, 631 F.3d 1310, 1314, 1315-19 (11th Cir. 2011) (reversing and remanding a district court's denial of a motion to proceed anonymously but finding no error in court's procedure of preliminarily granting the motion before revisiting the issue prior to trial). After Defendant appeared, he filed a motion to dismiss Plaintiffs' Complaint and a motion for reconsideration of the Pseudonym Order. Doc. 40; Doc. 41. After Plaintiffs filed an Amended Complaint (and some procedural entanglement), Defendant filed a renewed motion to dismiss and motion for reconsideration of the Pseudonym Order. Doc. 55; Doc. 59.

The Court granted Defendant's motion to dismiss Plaintiffs' state claims but upheld Plaintiffs' TVPA claim and ordered that these proceedings be bifurcated to first determine whether their claim is barred by the statute of limitations. *See* Doc. 81 at 15-16. If the Court determines that Plaintiffs' equitable tolling defense is successful, then this litigation will proceed to a second phase for resolution of their TVPA claim on the merits. *See id.*

The Court also granted in part and denied in part Defendant's motion for reconsideration of the Pseudonym Order. *See* Doc. 82. In balancing the relevant

considerations, the Court concluded that threats of violence against Plaintiffs tipped the balance in favor of maintaining pseudonymity through the first phase of the case. *Id.* at 17-18. The Court found that prejudice to Defendant was mitigated by the issuance of a Protective Order which allowed Defendant's counsel to learn Plaintiffs identities for the purposes of statute of limitations discovery and by the nature of the equitable tolling phase, which is focused only on whether Plaintiffs were diligent in pursuing their rights. *Id.* However, the court recognized that if Plaintiffs are successful in proceeding past the first phase of this litigation, they will be required to "share their identities with Defendant for discovery on the merits of their claim." *Id.* at 18, n. 13.

On August 22, 2025, Defendant then filed a motion to amend the Protective Order, which the Court granted in part on November 4, 2025. *See* Doc. 119. The Protective Order, as amended, allows Defendant's counsel to share Plaintiffs identities with "[e]xperts, investigators, translators, interpreters, or document vendors" as is necessary to thoroughly examine and defend against Plaintiffs' claim for the application of equitable tolling. Doc. 119-1 at 12-13.

On September 5, 2025, Defendant filed the present underlying Motion to Modify the Protective Order. Doc. 94. In his Motion, Defendant argues that the infringement of his due process rights occasioned by his prohibition from learning Plaintiffs' identities constitutes a manifest injustice and the Court should modify

the Protective Order. *See id.* The Motion was referred to the magistrate judge, who construed it as another motion for reconsideration of the Court's Pseudonym Order. Doc. 120 at 3-5. The magistrate judge did not find the requisite extraordinary cause under the reconsideration standard to grant Defendant's relief and, in the alternative, that his arguments were not persuasive on the merits. *Id.* at 8-10. The magistrate also recommended the Court deny Defendant's request to certify the issue for interlocutory appeal, recognizing the fact-heavy analysis and discretionary bases of the Pseudonym Order. *Id.* at 10-12.

On November 8, 2025, Defendant filed the instant Objection to the magistrate judge's Report & Recommendation ("R&R"). Doc. 128. On December 1, 2025, Plaintiffs Responded and, after obtaining leave from the Court, Defendant filed a Reply brief on December 12. Doc. 130; Doc. 136. The matter is ripe for adjudication.

**II.     Legal Standard**

A party may challenge the findings and recommendations of a magistrate judge by filing "written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 783 (11th Cir. 2006) (unpublished) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir.1989)).[1]

---

[1] The Court relies on *Macort*, an unpublished decision, only insofar as it quotes from the

"Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report…to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* at 783-84.

**II.  Analysis**

*A. Defendant's Substantive Arguments Were Not Properly Raised with the Magistrate Judge*

The magistrate judge recommended that Defendant's motion be denied "because he did not cite to the appropriate standard for relief or otherwise establish that the extraordinary remedy of reconsideration is appropriate." Doc. 120 at 9. Despite labeling his heading "Specific Objections[,]" Defendant makes none. *See* Doc. 128 at 4. Instead, he abuses his right to object to the R&R by making new arguments that were never raised to the magistrate.[2] The Court will not consider them.

---

language of *Heath*, a published decision of the Eleventh Circuit.

[2] Surprisingly, Defendant does not even object to the magistrate's application of the motion for reconsideration standard; he simply makes two arguments without reference to any standard and complains generally that his due process rights are being violated. *See Macort v. Prem, Inc.*, 208 F.App'x 781, 784 (11th Cir. 2006) ("It is critical that the objection be sufficiently specific and not a general objection to the report.") (citing *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984)).

A "district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (quoting *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)). Defendant acknowledges this standard and tacitly concedes that his arguments were not raised in his original motion. *See* Doc. 136 at 1-2, n.1.

First, as Plaintiffs recognized, Defendant never argued that the factors laid out in *Doe v. Stegall* should not apply to this case in his underlying Motion to Modify the Protective Order, or in his Reply. 653 F.2d 180, 185 (5th Cir. 1981); *see* Doc. 94; Doc. 107. Indeed, he explicitly *weighed* those kinds of factors (albeit citing to a different case) in arguing that the Court should have reached a different conclusion. Doc. 94 at 5-11. Therefore, the R&R did not consider his instant argument that the *Stegall* factors should not apply at all in weighing the pseudonym issue here. *See generally* Doc. 120.

Where Defendant continues to seek bite after bite at the apple of pseudonymity, the Court categorically declines to reconsider—again—its ruling allowing Plaintiffs to proceed through Phase One of this case pseudonymously. *Club Madonna*, 42 F.4th at 1259 ("[W]e made clear that the district court retains 'final adjudicative authority' in deciding whether to consider and evaluate new

arguments that a party did not raise before the magistrate judge."); *see generally* Doc. 82.

Defendant likewise never made the vague claim that "there is manifest injustice" in the underlying Motion to Modify or Reply. *See generally* Doc. 94; Doc. 107. In fact, he rejected entirely that the instant Motion constituted a motion for reconsideration—despite being put on notice to that reality by Plaintiffs' response brief (and common sense). Doc. 107 at 2-3. Like his argument regarding the *Stegall* factors, this, too, is just a transparent attempt to request the Court reconsider an issue it has already resolved. *See* Doc. 82. Where Defendant did not raise this argument with the magistrate judge and only generally objects to the R&R's conclusion, this Court will not consider it. *See Club Madonna*, 42 F.4th at 1259.

\* \* \*

For the sake of clarity, the Court reiterates that its decision to allow Plaintiffs to remain anonymous through the first phase of this matter was not taken lightly or in ignorance to Defendant's due process concerns. *See* Doc. 82 at 17. As the Court has emphasized on numerous occasions, it is an extraordinary fact that Defendant has freely admitted to being in contact with *three* of the individuals who have been observed making serious threats against Plaintiffs and their counsel—threats that have been substantiated by the Federal Bureau of Investigation. *See* Doc. 94 at 20;

Doc. 82 at 8. Indeed, those threats "are compounded by his [continual] minimization of the[ir] seriousness[.]" Doc. 82 at 18, n. 13.

And while there may be scant precedent to support the Court's decision, the reality is that there are very few cases that present a factual context like this one—especially where a TVPA defendant admits to being in semi-regular contact with individuals making death threats against the plaintiffs and their counsel. The one case that does bear some resemblance to these facts is *Doe v. Islamic Salvation Front (FIS)*, which Defendant mischaracterizes. 993 F.Supp. 3, No. 96–02792 (SS) (D.D.C. Feb. 3, 1998).

He admits that—like the instant matter—"how long [those plaintiffs] could remain anonymous depended on the relevance of plaintiffs' identities to the claims and defenses in the case." Doc. 128 at 5, n. 2. But Defendant neglects to inform the reader that a different judge eventually took jurisdiction of that case and—four years in—decided that it was time for the plaintiffs to reveal their identities. *See Doe*, No. 96-02792 at Doc. 101. Moreover, it came to that conclusion because the defendant needed their identities "to conduct proper discovery, including depositions." *See* Doc. 128 at 5, n.1.

In the present matter, Defendant is represented by 8 attorneys of record who, along with their entire support staff (including investigators, etc.), all have access

to Plaintiffs' identities under the Protective Order.[3] *See* Doc. 119-1 at 12 (allowing disclosure to counsel, support staff, investigators, translators, interpreters, document vendors and "any other persons as the Parties may agree to in writing or as the Court may, upon hearing, so direct."). Thus, the concerns in *Doe* which led that court to order divulgence of the plaintiffs' identities to the defendant have been mitigated in this case.

The only support Defendant offers for his argument is that his connections throughout the Iranian diaspora are so extensive that without his personal input, his investigators may miss these "individuals who could provide testimony or evidence that Plaintiffs did not fear reprisal or that they were aware of [Defendant's] whereabouts years before they filed this lawsuit." Doc. 128 at 8.

The Court is prepared to take this minimal risk for three reasons: (1) in light of the unlikely event that Defendant knows every Iranian in the United States and their movements over the past fifty years, the chances are minimal that any material testimony (which would likely amount only to hearsay) will be lost; (2) Defendant is in open communication with individuals making threats against Plaintiffs' (and

---

[3] Defendant asks the Court to consider the consequences of its Order if he was proceeding *pro se*. Doc. 128 at 7, n. 4. But Defendant is not proceeding *pro se*; such hypothetical suggestions have no relevance to this fact-bound analysis. *See generally* Docket (showing that Defendant currently employs 8 attorneys of record).

their counsels') lives and continues to minimize the serious nature of this fact; and (3) because Defendant's entire team of attorneys, investigators, etc. have access to Plaintiffs' identities and will be able to depose them, which will be the primary source of evidence in this phase focused solely on *Plaintiffs'* actions in pursuing their rights.

The Court is cognizant of the fact that allowing Plaintiffs to proceed anonymously is an extraordinary remedy. But this is an extraordinary circumstance and the Court has done its best to balance Plaintiffs' substantiated and serious security concerns with Defendant's right to a fair trial. *See generally* Doc. 81; Doc. 82.

### *B. The Court Declines to Certify this Matter for Interlocutory Appeal in the Interest of the Just and Efficient Resolution of the Case*

Finally, Defendant objects to the magistrate judge's recommendation that he has "not demonstrated that exceptional circumstances warrant a certification for interlocutory review." *See* Doc. 120 at 11. Apart from suggesting that "there is substantial ground for difference of opinion on an issue of first impression for the Eleventh Circuit[,]" he offers little argument. Doc. 128 at 9-10.

"We have identified five conditions that generally must be met before we will consider an issue on interlocutory appeal under § 1292(b)." *Nice v. L-3 Commun. Vertex Aerospace LLC*, 885 F.3d 1308 (11th Cir. 2018) (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)). "One of those is that the 'issue is a pure question

of law'…and the defendants falter at that first hurdle." *Id.* At best, "this issue is neither neat nor clear from any vantage point in the record." *Id.* at 1313.

Defendant cites to *U.S. v. Microsoft Corp.* for the proposition that other courts have never allowed this "drastic result[,]" but in that case the district court conducted no factual inquiry of its own and did not consider the extraordinary nature of the relief it had granted. 56 F.3d 1448, 1464 (D.C. Cir. 1995). Here, the Court has explicitly considered the unique and significant factual peculiarities in the matter and, based on that consideration, has devised a compromise to protect Plaintiffs' identities for a limited time (to probe whether they even have a viable claim). *See* Doc. 81; Doc. 82. While Defendant claims the issue can be reduced to whether any defendant can be precluded from knowing a plaintiff's identity, "the issue raised here is not th[at] kind of pure or abstract question of law." *Mamani*, 825 F.3d at 1313. It requires delving into the particular facts of this case which implicates the due process rights of all the parties.

Moreover, as to the final § 1292(b) factor, there is no question that certifying this matter for appeal now would not "substantially decrease the amount of litigation necessary on remand." *Id.* at 1312. At this stage only six weeks of discovery remain on Phase One. Doc. 119 at 12. Interrupting this process now will only lead to wasteful and duplicative discovery.

This is especially so because, under the Court's schedule, Defendant will suffer little effective loss of his due process rights during Phase One of this action. Phase One is restricted to the sole question of equitable tolling (ie. whether Plaintiffs diligently pursued their rights), which does not involve Defendant—it is solely an inquiry into the actions *Plaintiffs* took. *See* Doc. 81 at 15-16. Should Defendant prevail, the pseudonym issue will be (in the main) moot. If he does not, he will have a complete record of Phase One upon which to mount a comprehensive appeal of this Court's decisions without interrupting an already heavily litigated case for a partial appeal on a half-baked record.

Moreover, appellate courts are known for a preference that novel constitutional questions "percolate[] sufficiently in the lower courts" to aid in the "process of development of national law." *McCrory v. Alabama,* 144 S.Ct. 2483, 2489 (2024); *California v. Carney*, 471 U.S. 386, 400 , n.11 (1985) (*dissent*, J. Stevens) (citing Estreicher & Sexton, supra n. 8, at 716, 719 (footnotes omitted)).

### III.  Conclusion

Accordingly, it is **ORDERED** that Defendant's Objections to the R&R are **OVERRULED**:

1. The **REPORT AND RECOMMENDATION** is hereby **CONFIRMED AND ADOPTED** as part of this Order;

2. Defendant's Motion to Modify Protective Order (Doc. 94) is hereby

**DENIED.**

**DONE** and **ORDERED** in chambers in Orlando, Florida on December 22, 2025.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties